1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  SUSAN L. HOLLAND-HEWITT, | Case No. 1:20-cv-00652-ADA-SAB |
| 12        Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND REQUIRING DEFENDANT TO PROVIDE FURTHER AND SUPPLEMENTAL RESPONSES WITHIN TWENTY-ONE DAYS |
| 13     v. | |
| 14  ALLSTATE LIFE INSURANCE COMPANY, | (ECF Nos. 46, 52) |
| 15 | |
| 16        Defendant. | |
| 17 | |

18
### I.

19
### INTRODUCTION

20        Currently before the Court is Plaintiff's motion to compel Defendant to provide further

21  responses to Interrogatory Nos. 17, 19, 20 and 21, and to provide a supplemental response and

22  production related to Request for Production No. 34.  (ECF No. 46.)  Having considered the joint

23  statement regarding the discovery dispute, as well as the Court's file, the Court issues the

24  following order granting Plaintiff's motion to compel.

25
### II.

26
### BACKGROUND

27        On May 8, 2020, Susan L. Holland-Hewitt ("Holland-Hewitt" or "Plaintiff") filed this

28  putative class action against Allstate Life Insurance Company ("Allstate" or "Defendant").  (ECF

No. 1.)   Plaintiff alleges Defendant wrongfully lapsed or terminated life insurance policies, including hers, without first providing all the consumer protections mandated by California Insurance Code Sections 1113.71 and 10113.72 (the "Statutes"), namely: minimum grace periods, proper notices of lapse, and the right to designate others to receive important duplicative notices and information regarding the insurance policy.  (Joint Statement Re Mot. Compel ("JS") 3, ECF No. 52; Compl., ECF No. 1.)[1]   Plaintiff alleges the termination of her policy, and many others, was and is invalid.  Plaintiff brings claims for Declaratory Relief, Breach of Contract, and Unfair Competition under the California Business & Professions Code on behalf of herself and a putative class defined as follows:

> All past, present, and future owners or beneficiaries of Defendant's life insurance policies in force on or after January 1, 2013 and governed by Sections 10113.71 and/or 10113.72, where the policies underwent or will undergo lapse, termination, and/or reinstatement without Defendant first providing written notice of and an actual 60-day grace period, a 30-day notice of pending lapse and termination, and/or an annual notice of a right to designate at least one other person to receive notice of lapse or termination of a policy for nonpayment of premium.

(JS 3; Compl. ¶ 41.)

On January 10, 2022, the Court issued a class action scheduling order setting deadline of September 30, 2022, for pre-certification discovery, and a deadline of October 28, 2022, to file a motion for class certification.  (ECF No. 40.)  On August 1, 2022, Plaintiff filed a motion to compel Defendant to provide further responses to Interrogatory Nos. 17, 19, 20 and 21, and to provide a supplemental response and production related to Request for Production No. 34.  (ECF No. 46.)  The matter was set for hearing on August 24, 2022.  (Id.)  On August 11, 2022, the Court continued the hearing on the motion until September 7, 2022, pursuant to the parties' stipulation.  (ECF Nos. 49, 50.)  On August 24, 2022, the parties filed a joint statement regarding the motion to compel.  (ECF No. 52.)  On September 6, 2022, the Court found this matter suitable for decision without oral argument, and vacated the hearing.  (ECF No. 53.)  On October 21, 2022, the Court granted an extension of the deadline to file a motion for class certification until

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

November 14, 2022.  (ECF No. 56.)  On October 26, 2022, Plaintiff filed a notice of recent decisions in support of the motion to compel.[2]

### III.

### LEGAL STANDARD

Rule 26 provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information need not be admissible in evidence to be discoverable.  Id.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

Relevancy is broadly defined to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  Although relevance is broadly defined, it does have "ultimate and necessary boundaries."  Gonzales v. Google, Inc., 234 F.R.D. 674, 680 (N.D. Cal. 2006) (quoting Oppenheimer Fund, Inc., 437 U.S. at 351).  While discovery should not be unnecessarily restricted, discovery is more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents.  Dart Industries Co., Inc. v. Westwood Chemical Co., Inc., 649 F.2d 646, 649 (9th Cir. 1980).  In deciding discovery disputes, courts must be careful not to deprive the party of discovery that is reasonably necessary to their case.  Dart Industries, 649 F.2d at 680.  Pursuant to Rule 26(c)(1), the Court may, for good cause, issue a protective order forbidding or limiting discovery.   The avoidance of annoyance, embarrassment, oppression, or undue burden or expense are grounds for the issuance of a protective order.  Fed. R. Civ. P. 26(c).

---

[2] As no new controlling authority was presented in this filing, the Court found it unnecessary to consult the authorities cited therein, or to have Defendant file a response to that filing, to adjudicate this motion.

Rule 33 of the Federal Rules of Civil Procedure authorizes a party to serve interrogatories on another party.  "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).  "The grounds for objecting to an interrogatory must be stated with specificity," and "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.  Fed. R. Civ. P. 33(b)(4).

Rule 34 of the Federal Rules of Civil Procedure, pertaining to document production requests, provides that

> A party may serve on any other party a request within the scope of Rule 26(b):
> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
> (A) any designated documents or electronically stored information--including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. . . .

Fed. R. Civ. P. 34(a).  "The party to whom the request is directed must respond in writing within 30 days after being served. . . ."  Fed. R. Civ. P. 34(b)(2)(B).  A party's response "may state an objection to a requested form for producing electronically stored information. If the responding party objects to a requested form--or if no form was specified in the request--the party must state the form or forms it intends to use."  Fed. R. Civ. P. 34(b)(2)(D).

Rule 37 of the Federal Rules of Civil Procedure provides that a party may move for an order compelling disclosure or discovery.  Fed. R. Civ. P. 37(a)(1).  "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" where "(i) a deponent fails to answer a question asked under Rule 30 or 31; (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4); (iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents or fails to respond that inspection will be permitted -- or fails to permit inspection -- as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B).  The party opposing the discovery bears the burden of resisting disclosure.  Bryant v. Armstrong, 285 F.R.D. 596, 600 (S.D. Cal. 2012).

4

If a motion to compel discovery is granted, the Court must order the "party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). If the motion is denied, the court must "require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," however the court "must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). Where the motion is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

## IV.

## DISCUSSION

### A.    The Discovery Requests

The Court shall first reproduce the discovery requests that are subject to the dispute, as well as related requests and applicable definitions, as set forth in the parties' joint statement. Interrogatory No. 17 requested as follows:

> **Plaintiff's Interrogatory No. 17:** Please identify, by POLICY owner name, address, phone number, email address, POLICY type (i.e. group versus individual), all CLASS MEMBERS, including beneficiaries for POLICIES where the insured has died. This information should be provided in electronic format and specifically, in .CSV, .XLS, or other format fully accessible by Microsoft Excel.

The relevant definitions for Interrogatory No. 17 are:

> • "CLASS MEMBER(S)" means all owners and beneficiaries of LIFE INSURANCE POLICIES that were lapsed or terminated due to nonpayment of premium without first being given all of the following to both the policy owner and all individuals designated by the policy owner to receive the following notices: (1) written notice of and an actual 60-day grace period, (2) a 30-day notice of pending lapse and termination, and (3) an annual notice of a right to

5

designate at least one other person to receive notice of lapse or termination of a policy for nonpayment of premium.

• "LIFE INSURANCE POLICIES" "POLICY" and "POLICIES" mean any life insurance policy or policies or certificate of insurance sold, issued, delivered, reinstated, renewed, administered in/from, and/or converted in California, and which were in-force at any point on or after January 1, 2013. This definition includes policies for which YOU had a California address for the policy owner, or which YOU received premiums from an address in California. To avoid doubt, this definition is meant to be construed in the broadest possible sense and includes, among others, all life insurance policies and certificates of insurance, both individual and group, for which YOU were responsible at any point on or after January 1, 2013, even if you are not responsible for them today, and/or if you may not have originally sold, issued, or delivered them.

Defendant responded as follows:

**Defendant's Response to Interrogatory No. 17:** Initial Response: Allstate's objections to Definitions and Instructions are incorporated since they apply to this Interrogatory. Allstate objects to this request on the ground that it is overly broad, without any reference to applicable timeframe, unduly burdensome, not relevant to the claims or defenses in this action or proportional to the needs of the case prior to any class certification. Allstate further objects that this Interrogatory calls for the production of documents and information that Allstate is prohibited from disclosing pursuant to California's privacy laws. See, e.g., Cal. Ins. Code § 791.13 (generally prohibiting the disclosure of "personal" information without receiving the insured's authorization). Allstate further objects to requests for information relating to insurance policies issued or delivered on or after January 1, 2013, as there are no credible allegations in Plaintiff's Complaint that Allstate failed to comply with the Statutes with respect to insurance policies issued or delivered on or after January 1, 2013. Allstate further objects to this Interrogatory to the extent it seeks information related to any policies that purportedly lapsed or terminated for nonpayment of premium prior to the expiration of a 60-day grace period, that purportedly lapsed or terminated for nonpayment of premium without written notice of a grace period of 60 days or more, or that purportedly lapsed or terminated for nonpayment of premium without at least 30 days written notice because Allstate provided at least 30 days written notice of the Policy's pending lapse and 61-day grace period before the lapse occurred. Plaintiff therefore has suffered no plausible injury relating to these alleged injuries, making any such information irrelevant to her claim.

**Supplemental Response:** Subject to and without waiving the objections initially raised, Allstate refers Plaintiff to its supplemental response to Interrogatory No. 6.

/ / /

/ / /

Plaintiff's Interrogatory No. 6 and Defendant's responses thereto are as follows:

**Plaintiff's Interrogatory No. 6**: State the actual or estimated number of YOUR LIFE INSURANCE POLICIES in California at any time, not pending lapse or termination and in force as of January 1, 2013.

**Defendant's Initial Response**: Allstate's objections to Definitions and Instructions are incorporated since they apply to this Interrogatory. Allstate objects that this Interrogatory is vague, overbroad, and not proportional to the needs of this case prior to any class certification. Allstate further objects to requests for information relating to insurance policies issued or delivered on or after January 1, 2013, as there are no credible allegations in Plaintiff's Complaint that Allstate failed to comply with the Statutes with respect to insurance policies issued or delivered on or after January 1, 2013. Subject to and without waiving those objections, Allstate stipulates to the numerosity requirement in Federal Rule of Civil Procedure 23 with respect to life insurance policies issued or delivered in California before January 1, 2013, that subsequently lapsed or terminated for nonpayment of premium without the policy owner receiving notice of the right to designate a secondary addressee to receive notices of pending lapse for non-payment of premium.

**Defendant's Supplemental Response:** Subject to and without waiving the objections initially raised, and subject to plaintiff's agreement that the production of responsive information will not be deemed a waiver of the work-product doctrine or any other privilege, Allstate agrees to provide reasonably available, relevant data that is proportional to the needs of this case at the pre-certification stage and that adequately safeguards putative class members' privacy interests regarding life insurance policies issued or delivered in California before January 1, 2013, that subsequently lapsed or terminated for nonpayment of premium after January 1, 2013.

Plaintiff's Interrogatory No. 20 is as follows:

**Plaintiff's Interrogatory No. 20:** For each POLICY identified in response to Interrogatory No. 19,[3] identify and provide all contact

---

[3] Interrogatory No. 19 asked about the subset of class policies where Defendant has some notice or belief that the insured on the policy is deceased:

**Plaintiff's Interrogatory No. 19:** For each POLICY identified in response to Interrogatory No. 17, identify any POLICIES, where YOU have notice or belief that the insured is deceased, including, but not limited to, any insureds identified in the Death Master File, and the date on which the insured died.

**Defendant's Response to Interrogatory No. 19:** Allstate's objections to Definitions and Instructions are incorporated since they apply to this Interrogatory. Allstate further incorporates all objections to Interrogatory No. 17. Allstate further objects to this Interrogatory on the ground that it seeks information protected by the attorney-client privileged, work product doctrine, or other privilege or protection.

information for the named beneficiary or beneficiaries under the POLICY, whether and when the POLICY owner previously requested reinstatement of the POLICY, and whether and when a claim for benefits was made and/or rejected.

**Defendant's Response to Interrogatory No. 20:** Initial Response: Allstate's objections to Definitions and Instructions are incorporated since they apply to this Interrogatory.   Allstate incorporates all objections to Interrogatory Nos. 17 and 19.

**Defendant's Supplemental Response:** Subject to and without waiving the objections initially raised, Allstate refers Plaintiff to its supplemental response to Interrogatory No. 6.

**Plaintiff's Request for Production No. 34:** Please produce YOUR data or ESI disclosing, for every LIFE INSURANCE POLICY issued or delivered in California which lapsed at any time on or after Jan. 1, 2013 for nonpayment of premium, the following categories, columns, or data points: policy number, administrative system, policy type, product name or code, issue date, current policy status, date of policy lapse/TERMINATION, issue state, reinstatement date, owner contact information (name, mailing address, phone number, email address); beneficiary contact information (name, mailing address, phone number, email address), policy benefit amount, and date of death of the insured, if applicable. This data or ESI should be produced in the form of an electronic spreadsheet or .CSV file capable of being read, sorted, or filtered using Microsoft Excel.

The relevant definitions for this request are the same as the definitions listed above, but also include the following definition of "TERMINATION": "a declaration that the POLICY is lapsed, no longer in force, no longer active, or no longer has any value so as to relieve YOU of further obligation to pay benefits upon the death of the insured."  (JS 6-7.)  Defendant's response to request No. 34 is as follows:

**Defendant's Response to Request No. 34:** Allstate's objections to the Definitions and Instructions are incorporated since they apply to this Request. Allstate further objects because this Request is overbroad, unduly burdensome, and not proportional to the needs of the case, particularly in this pre-class certification phase of discovery and because the Request seeks information relating to life insurance policies issued or delivered in California on or after January 1, 2013, and the Policy was issued and delivered in California before January 1, 2013. Allstate further objects to this Request to the extent it seeks information related to any policies that purportedly lapsed or terminated for nonpayment of premium prior to the expiration of a 60-day grace period, that purportedly

**Supplemental Response:** Subject to and without waiving the objections initially raised, Allstate refers Plaintiff to its supplemental response to Interrogatory No. 6.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

lapsed or terminated for nonpayment of premium without written notice of a grace period of 60 days or more, or that purportedly lapsed or terminated for nonpayment of premium without at least 30 days written notice because Lincoln Benefit provided at least 30 days written notice of the Policy's pending lapse and a 61-day grace period before the lapse occurred. Plaintiff therefore has suffered no plausible injury relating to these alleged issues, making any such information irrelevant to her claim. See, e.g., Wilson v. Conair Corp., 2015 WL 1994270, at *5-7 (E.D. Cal. Apr. 30, 2015). See also General Tel. Co. of the S.W. v. Falcon, 457 U.S. 147, 155-156 (1982); Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992); Lee v. Oregon, 107 F.3d 1382, 1390 (9th Cir. 1997). Allstate further objects to the portions of this Request that seek disclosure of personal, non-public information protected from disclosure by the United States Constitution, California Constitution, and/or any state or federal statute. See, e.g., Cal. Ins. Code § 791.13 (generally prohibiting the disclosure of "personal" information without receiving the insured's authorization). Allstate also objects to the extent that this Request seeks documents protected by the attorney-client privilege, work product doctrine, or other privilege or protection. Subject to and without waiving these objections, and subject to Plaintiff's agreement that the production of responsive information will not be deemed a waiver of the work- product doctrine or any other privilege, Allstate has provided reasonably available, relevant data that is proportional to the needs of this case at the pre-certification stage and that adequately safeguards putative class members' privacy interests regarding life insurance policies issued or delivered in California before January 1, 2013, that subsequently lapsed for nonpayment of premium after January 1, 2013.

17
18
19
20
21

(JS 7.)  The Parties' current dispute as to further and supplemental responses presents two principal issues.  The first issue concerns Defendant's objection to providing contact information. The second issue concerns Defendant's objection to providing any information related to policies issued in or after 2013.  (JS 7.)  The Court now turns to discussion of the parties' arguments as to these two issues.

22

**B.      Issue No. 1: Contact Information**

23

1.      Plaintiff's Arguments

24
25
26
27

Plaintiff argues Defendant refuses to provide basic contact information for class members and witnesses, wishing to keep an unfair informational advantage with exclusive access to its list of witnesses that it will cherry pick from when it comes to providing evidence related to Plaintiff's claims and its defenses, and when it attempts to oppose class certification.  (JS 8.)

28

/ / /

### a.     Relevance

Plaintiff first argues it meets the low threshold for relevance, and suggests Defendant recognizes the relevance of class member contact information because it cited the absent class members in its initial disclosures.  (Decl. Alex Tomasevic Supp. JS ("Tomasevic Decl.") ¶ 2, ECF No. 52-1 at 1, Ex. A, ECF No. 52-1 at 4.)  In the section calling for "individuals likely to have discoverable information that [Defendant] may use to support its claims or defenses," Defendant voluntarily cited "Individual Policy Owners" and added the following note, but without providing the contact information required by Rule 26(a): "Individual Policy Owners may possess information about the circumstances surrounding the lapses of their respective policies for non-payment of premium and the resulting harm, if any, arising from Allstate's alleged non-compliance with California Insurance Code Sections 10113.71 and 10113.72."  (Ex. A, ECF No. 52-1 at 76.)

Plaintiff proffers courts routinely agree class member/witness contact information is an appropriate discovery topic, first citing the California Supreme Court.  See Pioneer Elecs. (USA), Inc. v. Sup. Ct., 40 Cal.4th 360, 373 (2007) ("Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case").  Plaintiff notes the United States Supreme Court has recognized the importance of allowing class counsel to communicate with class members for the purpose information gathering, even before class certification, Gulf Oil Co. v. Bernard, 452 U.S. 89, 102-103 (1981), and submits California district courts routinely allow such discovery.  Wellens v. Daiichi Sankyo Inc, No. C-13-00581-WHO (DMR), 2014 WL 969692, at *4 (N.D. Cal. Mar. 5, 2014); Rojas v. Bosch Solar Energy Corp., No. 18-cv-05841-BLF, 2020 U.S. Dist. LEXIS 29163, at *8 (N.D. Cal. Feb. 20, 2020); Gamino v. KPC Healthcare Holdings, Inc., No. 5:20-cv-01126-SBSHK, 2021 U.S. Dist. LEXIS 109358, at *4 (C.D. Cal. June 2, 2021); Artis v. Deere & Co., 276 F.R.D. 348, 352 (N.D. Cal. 2011).  (JS 9.)

Plaintiff proffers the Ninth Circuit has favored allowing class discovery unless it is apparent the plaintiff cannot maintain the action on behalf of the class.  Goundar v. Redfin Corp., 2014 U.S. Dist. LEXIS 189393, 2014 WL 12524649, at *2 (C.D. Cal. July 21, 2014); Vinole v.

1   Countrywide Home Loans, Inc., 571 F.3d 935, 942 (9th Cir. 2009); Maharaj v. Charter
2   Commc'ns, Inc., No. 20CV64-BAS-LL, 2021 WL 1428489, at *6 (S.D. Cal. Apr. 15, 2021);
3   Putnam v. Eli Lilly & Co., 508 F.Supp.2d 812, 814 (C.D. Cal.  2007).   Plaintiff submits
4   California District Courts, in nearly identical cases against Defendant's competitors, have
5   compelled responses to identical interrogatories and have required the defendant to produce said
6   information.  Siino v. Foresters Life Ins. and Annuity Co., No. 20-cv-02904-JST, ECF 55 (N.D.
7   Cal. Dec. 10, 2020); Grundstrom v. Wilco Life Insurance Co., No. 20-cv- 03445-MMC, ECF 57
8   (N.D. Cal. May 9, 2022); Pitt v. Metropolitan Tower Life Ins. Co., No. 20- cv-00694-BAS, 2021
9   U.S. Dist. LEXIS 113019, at *8-9 (S.D. Cal. June 16, 2021); Kelley v Colonial Penn Life
10  Insurance Co., No. 20-cv-3348-FLA, ECF 46 (C.D. Cal. May 19, 2022).

11         As for Small v. Allianz, Plaintiff contends this is an outlier case where the Magistrate
12  Judge, in error, denied pre-certification discovery of class contact information that was, according
13  to Judge Scott, "not consistent with [Plaintiff's] theory of the case or the allegations in the
14  Complaint."  Small v. Allianz Life Ins. Co. of N. Am., No. 220CV01944TJHKES, 2022 WL
15  3013097, at *1 (C.D. Cal. July 13, 2022).  Respectfully, Plaintiff believes this decision, as well as
16  the Moreland decision also cited by Defendant, is in the minority on this point and was made in
17  error.  Plaintiff suggests that on the order's face, for example, Judge Scott did not factor in
18  Defendant's defenses and how Defendant intends to oppose class certification there.

19         Plaintiff emphasizes the Supreme Court's reminder that the class certification inquiry
20  requires a "vigorous analysis."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011).  Here,
21  Plaintiff contends class member information will directly assist the analysis, and in particular,
22  weighing Defendant's defenses to commonality and typicality.  As an example, Plaintiff proffers
23  it is undisputed Defendant will challenge certification and the merits by claiming there are
24  "causation" defenses, and Plaintiff proffers Defendant "must do so because it admits to not
25  applying all [t]he Statutes' protections to over 34,000 policies before terminating said policies for
26  nonpayment of premium[,] [and] [t]hus, Defendant is forced to argue that, allegedly, there are
27  class members who were going to miss their premium payments no matter how much notice they
28  received, or that they really did not want their insurance anymore and, according to Defendant,

1  the insurance company's admitted failures did not really 'cause' any harm [and] [t]hese are

2  apparently the class members Defendant vaguely refers to in its Initial Disclosures."  (JS 10.)

3  Given this, Plaintiff argues this is a key dispute in this case and Defendant cannot be allowed to

4  put on evidence, or examples, of alleged class member subjective intent without allowing Plaintiff

5  to fairly probe those defenses.  (Id.)

6       In sum, Plaintiff argues because witness contact information and basic policy details will

7  allow Plaintiff to confirm or deny Defendant's conduct or a policy owner's alleged conduct, the

8  information is relevant to claims and defenses here, and allowing one side (the insurance

9  company here) to withhold relevant evidence that could result in potential witness testimony that

10  it intends to rely on in this case is extremely prejudicial to Plaintiff and not in accord with the

11  broad discovery rules.

12       **b.      Proportional and not Overbroad**

13       Plaintiff suggests that: Defendant's systems are fully automated and easily capable of

14  running queries; it is the insurance company's business to track policy owners, and policy events,

15  including deaths, on a routine and ongoing basis, Cal. Ins. Code § 10508; and that it is undisputed

16  Defendant has already identified the potentially affected policies and all related information,

17  including name and contact information, and exported most of it to an electronic and sortable

18  spreadsheet.  (JS 11.)  Plaintiff therefore argues Defendant cannot meet its burden to apply the

19  proportionality factors in Rule 26(b)(1), i.e., that the effort in producing them would somehow be

20  disproportional to the needs of the case.  Specifically, Plaintiff argues: (1) Defendant has not

21  quantified any purported burden in producing a discrete set of specific documents or data which

22  Defendant itself created and is required to maintain; (2) there is no question the documents are

23  important to the issues at stake here–concerning over 34,000 policies Defendant improperly

24  terminated without complying with the Insurance Code; and (3) the amount-in-controversy factor

25  is easily satisfied here--a case involving over 34,000 policies with over $143 million in unpaid

26  death benefits (as Defendant already disclosed in discovery).  Plaintiff argues the next factor–

27  relative access to the information–also tips sharply in Plaintiff's favor as Defendant has exclusive

28  possession over these documents and information; and Defendant "has already produced most of

1   the class data which means that all the efforts have already be[en] made and this information is

2   available to send to Plaintiff tomorrow if the court ordered it."  (JS at 12.)

3          Plaintiff argues Defendant's reliance on <u>Mantolete v. Bolger</u>, 767 F.2d 1416, 1424 (9th

4   Cir. 1985), and related cases is misplaced as <u>Mantolete</u> was an individual case wherein the

5   plaintiff was "fishing" to turn it into a national class action, and there was no indication there was

6   a class of affected people.  Plaintiff submits that this case on the other hand has always been a

7   class action; there are tens of thousands of class members all suffering under the same statutory

8   violation (where the violation is largely undisputed); and class discovery has been specifically

9   authorized and conducted following the scheduling conference.  Thus, Plaintiff states "[i]n other

10  words, the parties here are well past the 'prima facie' class action phase."  (<u>Id.</u>)

11         As a final note, Plaintiff proffers that the protective order entered on March 22, 2022,

12  (ECF No. 45), will easily safeguard whatever privacy interests are implicated by this discovery,

13  and suggests courts routinely agree.

14         2.     <u>Defendant's Arguments as to Issue No. 1</u>

15         Defendant first responds that, as acknowledged by Plaintiff, it has already provided

16  responsive policy data in an anonymized format that does not identify names and contact

17  information of the policy owners.  Defendant notes that as to Plaintiff's contention that the sought

18  discovery is ready to produce tomorrow, "[d]espite Plaintiff's uninformed speculation to the

19  contrary, class member contact information is not 'available to send to Plaintiff tomorrow.' "  (JS

20  13 n.3.)  Specifically, for life insurance policies issued or delivered in California before January

21  1, 2013, that subsequently lapsed or terminated for nonpayment of premium after January 1,

22  2013, Defendant compiled and produced the following data, which comprised more than 1000

23  pages in Excel:

24         •      Policy Number;

25         •      Face amount;

26         •      Issue date;

27         •      Lapse date;

28         •      Duration of grace period;

- Internal administration system responsible for administering each policy;

- Plan description;

- Product group;

- Product type; and

- Whether the insured is believed to be deceased and, if so, the corresponding date of potential death.

(Declaration of Kristen Reilly ("Reilly Decl.") ¶ 3, ECF No. 52-2 at 1.)  Defendant further states it has also produced documents and served discovery responses pertaining to its policies and procedures regarding notices and grace periods for the identified policies, (Id. at ¶ 4), "[y]et Plaintiff seeks more."   Defendant emphasizes Plaintiff now seeks to compel policy owners' personal, private information (i.e., the above-referenced data on a non-anonymized basis), and argues such data would not only reveal protected contact information but would also tie those individuals to sensitive, personal, financial decision-making information, and Plaintiff is not entitled to absent putative class members' personal identifying information, as it is legally protected and irrelevant at this precertification stage.  (JS 13-14.)

**a.    Defendant Argues Interrogatory Nos. 19 and 21 are Mooted by Production**

Defendant contends that although Plaintiff purports to compel the production of data regarding potential dates of death,[4] the aforementioned spreadsheet produced by Defendant identify both: (1) a "Death Potential Match"; and (2) a "Potential Date of Death" for insureds that are potentially deceased based on Defendant's agreement to search for such data, and similarly, although Plaintiff purports to compel Defendant to identify the face amount of policies for which the insureds are potentially deceased, Defendant has already produced this information. Defendant contends that because Plaintiff appears to have overlooked the data actually produced by Defendant, Plaintiff's Motion in this regard should therefore be denied.   Defendant notes that to the extent Plaintiff seeks information responsive to these interrogatories for life insurance policies issued on or after January 1, 2013, Plaintiff is not entitled to such discovery for the

---

[4] Interrogatory No. 19 requests that, from the policies produced in response to Interrogatory No. 17, Defendant identify any policies where it has "notice or belief that the insured is deceased" and "the date on which the insured died."

1    reasons set forth below as to Issue No. 2.

2          **b.      Defendant Argues Plaintiff has not Demonstrated that Pre-Certification**
            **Discovery of Policyholder and Beneficiary Contact Information Is Required**
3

4          California's Insurance Information and Privacy Protection Act (California Insurance Code

5    § 791.13) provides insureds with a specific, reasonable expectation of privacy in their "personal

6    or privileged information" that was "collected or received in connection with an insurance

7    transaction," including names and contact information.  See also Cal. Ins. Code § 791.02; Cal.

8    Const. art. I, § 1.  Defendant argues the information Plaintiff seeks to compel invokes these

9    protections, and Plaintiff has failed to articulate sufficient justification for the disclosure of absent

10   class members' personal information at this stage of the case.  Defendant argues permitting pre-

11   certification discovery of names and contact information of putative class members must be

12   justified by more than conclusory assertions that such information meets the threshold for

13   relevance, and the cases on which Plaintiff relies regarding the relevance of the names and

14   contact information of such class members are distinguishable and do not properly set forth the

15   relevant inquiry under Ninth Circuit precedent.  (JS 14-15.)  Defendant emphasizes the California

16   Supreme Court case cited by Plaintiff concerns the scope of discovery under state rules of

17   procedure, whereas the Federal Rules of Civil Procedure govern discovery in this case and the

18   Ninth Circuit has held "the plaintiff bears the burden of advancing a prima facie showing that the

19   class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce

20   substantiation of the class allegations."  Mantolete, 767 F.2d at 1424.  Defendant contends here,

21   Plaintiff has not attempted to advance a *prima facie* showing that the class action requirements set

22   forth in Rule 23 are satisfied, nor has Plaintiff met the burden of demonstrating how the names

23   and contact information of putative class members "is likely to produce a substantiation of the

24   class allegations."  Id.

25         Defendant proffers district courts in California have denied similar motions to compel.

26   Palmer v. Stassinos, No. 5:04CV3026 RMW(RS), 2005 WL 3868003, at *4-5 (N.D. Cal. May 18,

27   2005); Lopez v. PVH Corp., No. CV 15-03366-SVW (ASx), 2015 WL 13918888, at *1 (C.D.

28   Cal. Oct. 15, 2015); Johnson v. Sky Chefs, Inc., No. C11-05619 LHK (HRL), 2013 WL

1   11079297, at *2-3 (N.D. Cal. May 24, 2013).  Defendant submits the information it has already

2   provided mitigates any need for contact information at this pre-certification stage.  See McAdams

3   v. Nationstar Mortg., LLC, No. 20CV2202-L(BLM), 2022 WL 993546 (S.D. Cal. Apr. 1, 2022).

4          Defendant contends Plaintiff only provides the Court with a sole argument in support of

5   relevancy: that the information is relevant to Allstate's "defenses" to class certification, which

6   will be based in part on individualized factual issues, which Plaintiff characterizes as an alleged

7   "informational disadvantage."   Defendant suggests it appears Plaintiff is seeking to compel

8   Defendant to compile and produce thousands of names and related contact information of non-

9   parties based on the (unsubstantiated) anticipation that Defendant "could" offer "potential witness

10  testimony" from those individuals in opposing class certification because Defendant cited

11  "Individual Policy Owners" as individuals who "may possess information about the

12  circumstances surrounding the lapses of their respective policies for non-payment of premium" in

13  its initial disclosures.  (JS 16.)  As to this point, Defendant contends first that it does not plan to

14  offer witness testimony in opposition to class certification, and had Defendant planned to do so,

15  any such witness would be disclosed and identified to Plaintiff in accordance with the Federal

16  Rules.   Moreover, Defendant emphasizes Plaintiff fails to explain how she would utilize the

17  contact information sought here to respond to Defendant's arguments, for example, Plaintiff does

18  not allege that she will seek to prove class certification through surveys or declarations from

19  current individual policy owners or beneficiaries to prove (or rebut Defendant's evidence with

20  respect to) elements such as causation.   Furthermore, Defendant argues individual contact

21  information would not reveal policy owners' individual communications with Defendant,

22  including the many reasons why they may have knowingly ceased paying premiums prior to the

23  lapse of the policy, and Plaintiff has not demonstrated how or why the contact information would

24  arm Plaintiff with information relevant to Plaintiff's anticipated efforts to certify a class.

25          **c.      Additional Cases Discussed by Defendant**

26          As noted above, Defendant relies on Small, 2022 WL 3013097.  Defendant proffers the

27  court rejected an identical request from Plaintiff's counsel.  While Plaintiff contends "Judge Scott

28  did not factor in Defendant's defenses and how Defendant intends to oppose class certification

16

1   there," Defendant responds the plaintiff in <u>Small</u> did made similar arguments as Plaintiff does

2   here.  (<u>See</u> Reilly Decl., Ex. 4 (<u>Small</u>, Dkt. No. 62, at 10-11 (setting forth the plaintiff's position

3   that Allianz Life "will oppose class certification vigorously on typicality, adequacy, and standing.

4   The absent class members, therefore, . . . will confirm or deny Defendant's arguments against

5   certification")).)   Thus, Defendant argues that contrary to Plaintiff's contentions, Magistrate

6   Judge Scott factored the points raised by Plaintiff and rejected them.  As the court noted in <u>Small</u>,

7   the plaintiff's purported need for this information was found "not consistent with her theory of the

8   case," and undermined her position that the lapses were invalid and that the policies remain in

9   force in perpetuity in the absence of strict compliance with the Statutes.

10       Defendant further contends that proceedings in the cases upon which Plaintiff relies

11   demonstrate this inconsistency, as well as Plaintiff's lack of need for contact information, as both

12   <u>Siino v. Foresters Life Ins. & Annuity Co.</u>, Case No. 4:20-cv-02904-JST (N.D. Cal.), and <u>Pitt v.

13   Metropolitan Tower Life Ins. Co.</u>, Case No. 3:20-cv-00694-JO-DEB (S.D. Cal.) have reached the

14   class certification stage; in both cases the plaintiffs are represented by the same counsel as

15   represent Plaintiff in this action; in both cases, the plaintiffs compelled production of putative

16   class contact information; in neither case did plaintiffs' counsel incorporate either surveys based

17   on outreach to putative class members or declarations from individual class members into their

18   class certification briefing; Defendant submits there is no reason to believe that Plaintiff's counsel

19   will do anything different here; and emphasizes Plaintiff does not assert that she or her counsel

20   actually intend to contact putative class members.  (JS 18.)

21       Defendant further argues Plaintiff's representation that <u>Small</u> is the "one outlier" in

22   similar cases is incorrect, as in <u>Moreland</u>, the court similarly denied the plaintiff's motion to

23   compel pre-certification production of the very same information Plaintiff seeks here, and

24   observed that the plaintiff there failed to explain why the anonymized data already provided by

25   Defendant was insufficient and plaintiff could not "justify the need for this level of detail about

26   proposed plaintiffs."  (<u>See</u> Reilly Decl., Ex. 3, Slip. Op., <u>Moreland v. The Prudential Ins. Co. of

27   America</u>, Case No. 20-cv-04336-RS(SK) (Dkt. No. 52) (N.D. Cal. July 13, 2022) at 2.)  As in

28   <u>Moreland</u>, Defendant argues Plaintiff has failed to explain why the extensive data Defendant has

17

produced is insufficient, nor justified her need "for this level of detail" about potential class members at this juncture of the case.

Defendant notes a discovery request for putative class contact information is often a transparent ploy to find additional or replacement class representatives, and the Ninth Circuit has held that such discovery requests are improper. See In re Williams-Sonoma, Inc., 947 F.3d 535, 540) (9th Cir. 2020) ("Using discovery to find a client to be the named plaintiff before a class action is certified is not within the scope of Rule 26(b)(1)."). Finally, Defendant suggests Plaintiff is not at an "informational disadvantage," but contends that even assuming arguendo that Plaintiff's receipt of class member contact information would somehow advance her ability to seek class certification, the privacy interests of policy owners, including their interest in protecting personally identifiable financial information, outweigh any tenuous interest in the production of this data, emphasizing the policy owners are not taking part in this litigation and may never be part of this litigation in the event a class is not certified.

   3. The Court Rules in Favor of Plaintiff on Issue No. 1

For the reasons explained below, the Court finds in favor of Plaintiff as to Issue No. 1.

   **a.** **General Legal Standards for Pre-Certification Class Action Discovery**

The scope of pre-certification class discovery lies within the discretion of the court. Aldapa v. Fowler Packing Co. Inc., 310 F.R.D. 583, 588 (E.D. Cal. 2015) (citing Vinole, 571 F.3d at 942; Kamm v. California City Dev. Co., 509 F.2d 205, 210 (9th Cir. 1975) (affirming discretion of trial court and noting "propriety of a class action cannot be determined in some cases without discovery . . . [t]o deny discovery in a case of that nature would be an abuse of discretion [but] [w]here the necessary factual issues may be resolved without discovery, it is not required."). The Ninth Circuit has advised that the "better and more advisable practice" for district courts on precertification discovery "is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable," and that "the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant." Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977). Ninth Circuit case law therefore "stand[s] for the

1   unremarkable proposition that often the pleadings alone will not resolve the question of class

2   certification and that some discovery may be warranted." <u>Vinole</u>, 571 F.3d at 942.

3        Nonetheless, a court does not abuse its discretion in refusing to authorize precertification

4   discovery when the plaintiff fails to advance a *prima facie* showing that the class requirements

5   (*i.e.*, numerosity, commonality, typicality and adequacy of representation) of Rule 23 are satisfied

6   or that "discovery is likely to produce substantiation of class allegations." <u>Mantolete</u>, 767 F.2d at

7   1424 (citing <u>Doninger</u>, 564 F.2d at 1313 ("where the plaintiffs fail to make even a prima facie

8   showing of Rule 23's prerequisites, [] the burden is on the plaintiff to demonstrate that discovery

9   measures are likely to produce persuasive information substantiating the class action

10  allegations.")). A court is not *required*, however, to find a *prima facie* showing under Rule 23

11  prior to authorizing precertification discovery. <u>Kaminske v. JP Chase Bank N.A.</u>, No. SACV 09-

12  00918 JVS (RNBx), 2010 WL 5782995, at *2 (C.D. Cal. May 21, 2010)

13  (" *Doninger* and *Mantolete* stand for the proposition that a court does not abuse its discretion if it

14  decides to require a prima facie showing that class treatment is appropriate before allowing

15  discovery on issues pertaining to class certification . . . It is true that there is nothing

16  in *Doninger* and *Mantolete* that suggests that a prima facie showing is mandatory in all cases, and

17  it very well may be the case that courts routinely do not require such a showing [but] it is clear

18  that a court has discretion to decide whether to require the prima facie showing that was approved

19  of in *Doninger* and *Mantolete* before allowing discovery of the kind Plaintiff seeks here.");

20  <u>Pizana v. Sanmedica Int'l, LLC</u>, No. 118CV00644DADSKO, 2020 WL 6075846, at *3 (E.D. Cal.

21  Oct. 15, 2020) (same); <u>Razo v. AT&T Mobility Servs., LLC</u>, No. 1:20-CV-172-NONE-HBK,

22  2021 WL 5989753, at *3 (E.D. Cal. Dec. 17, 2021) (same).

23        **b.      Plaintiff has Sufficiently Demonstrated Relevancy**

24        Although not extensively supported with the reliance on the initial disclosures,

25  (Tomasevic Decl. ¶ 2, Ex. A), Plaintiff has met the threshold for establishing relevancy of the

26  information sought. <u>See Goundar v. Redfin Corp.</u>, No. CV133698PSGMRWX, 2014 WL

27  12524649, at *2 (C.D. Cal. July 21, 2014) ("In the present matter, Defendant is undoubtedly

28  correct to point to plaintiff's meagre showing in support of her request for discovery [as] [i]n

1   several filings with the Court, Plaintiff offers only minimal explanations about the putative class

2   claims, and present[s] no evidence in support of her contention that Rule 23 certification will be

3   appropriate at a later stage of the action[,] [y]et, that is the precise purpose of allowing a class

4   representative to obtain class contact information – to develop evidence in advance of the Rule 23

5   motion stage and establish numerosity, commonality, etc. regarding the class allegations . . .

6   Doninger and Vinole counsel in favour of allowing class contact discovery unless it is apparent

7   that Plaintiff cannot maintain the action on behalf of the class.").

8          Plaintiff's position is supported by the caselaw.  The bulk of the caselaw presented to the

9   Court demonstrates that class contact information is routinely found to be discoverable.  See, e.g.,

10  Wellens, 2014 WL 969692, at *4 ("Plaintiffs' request for the names, addresses, and phone

11  numbers of putative class members is a reasonable, narrow request directly relevant to the issue

12  of   class   certification.");   Arredondo v. Sw. & Pac. Specialty Fin., Inc., No.

13  118CV01737DADSKO, 2019 WL 6128657, at *3 (E.D. Cal. Nov. 19, 2019) ("Concerning the

14  contact information of the putative class members, district courts in this Circuit have often found

15  that [a]s a general rule, before class certification has taken place, all parties are entitled to equal

16  access to persons who potentially have an interest in or relevant knowledge of the subject of the

17  action, but who are not yet parties . . . [and] [f]or that reason, discovery of the putative class

18  members' contact information is routinely allowed.") (internal quotation marks and citation

19  omitted); Rojas, 2020 U.S. Dist. LEXIS 29163, at *8 (same);  Vinole, 571 F.3d at 942.

20         Defendant argues Plaintiff has not attempted to advance a *prima facie* showing that the

21  class action requirements set forth in Rule 23 are satisfied, nor met the burden of demonstrating

22  how the names and contact information of putative class members "is likely to produce a

23  substantiation of the class allegations," Mantolete, 767 F.2d at 1424, and proffers district courts in

24  California have denied similar motions to compel for these reasons, Palmer, 2005 WL 3868003,

25  at *4-5; Lopez, 2015 WL 13918888, at *1; Johnson, 2013 WL 11079297, at *2-3.  The Court

26  finds Montolete and these other cases distinguishable to the case, or do not convince the Court to

27  depart from the typical approach to this type of discovery.

28         First, although a *prima facie* showing is not strictly necessary, Pizana, 2020 WL 6075846,

at *3, the Court finds Plaintiff has made a sufficient proffer in the argument that this case has always been a class action; there are tens of thousands of class members all suffering under the same statutory violation (where the violation is largely undisputed); and class discovery has been specifically authorized.

The Court further finds Plaintiff has sufficiently demonstrated witness contact information and basic policy details will allow Plaintiff to confirm or deny Defendant's conduct or a policy owner's alleged conduct.  The Court finds Plaintiff has demonstrated the information sought is relevant to issues of commonality and typicality.  See Gamino, 2021 U.S. Dist. LEXIS 109358, at *6-7 ("Upon applying the correct standard, the Magistrate Judge determined that the identities and contact information of putative class members are relevant to the inquiry of commonality and typicality . . . [t]his conclusion was not clear error or contrary to law but, rather, in accordance with the frequent findings of courts within this circuit.") (internal quotations omitted) (collecting cases); Aldapa, 310 F.R.D. at 588 ("Disclosure of contact information for putative class members is a common practice in the class action context.") (citing Artis, 276 F.R.D. at 352); Putnam, 508 F. Supp. 2d at 814 ("Defendant offers no adequate explanation as to why information about pharmaceutical representatives in sales divisions other than the one in which plaintiff worked is not relevant to the inquiry.  Instead, it seems to the Court that contact with those individuals could well be useful for plaintiff to determine, at a minimum, the commonality and typicality prongs of Rule 23.").

In Palmer, the plaintiff sought fairly expansive types of documents in addition to the class contact information as part of the motion to compel:

> Palmer and Hammer also seek production of documents relating to the identification of individual putative class members, class member accounts, identification of and agreements with creditors, defendants' net worth, policies with respect to credit reporting agencies, and insurance policies. See Arons' Declaration at Exh. 3, pp. 6-14. Although the information requested may ultimately be relevant to the merits of the case concerning the putative class, it does not appear that the documents are related to Palmer and Hammer's claims for injunctive relief under either the CUCL or the FDCPA.

> Nevertheless, Palmer and Hammer argue that they are entitled to class information, such as the identity of class members, in order to

1

2

3

4

5

6

7

8

9

10

11

12

13

> meet class certification requirements pursuant to Fed.R.Civ.P. 23(a). They cite, among other cases, *Babbitt v. Albertson's, Inc.,* 1992 U.S. Dist. LEXIS 19091 (D.Cal., 1992), in which a defendant was compelled to disclose the names and addresses of putative class members prior to class certification. In that case, the court held that the identity of putative class members would lead to additional, discoverable evidence relevant to the class certification issues, namely: evidence related to numerosity, commonality, or typicality. In the present case, however, based on the information which Stassinos has been ordered to provide to plaintiffs regarding the number of putative class members and typical sample letters sent to such members, it does not appear that the identities of putative class members are required to enable plaintiffs to file a motion for class certification. In addition, the discovery requests appear impermissibly broad in light of the previous ruling by the presiding judge that each party is limited to three depositions, ten interrogatories, one set of narrowly tailored production requests, and ten requests for admission. *See* Case Management Conference Order Filed On December 17, 2004. Moreover, as noted above, consumers' rights to privacy may be implicated by these requests and plaintiffs have failed to establish a need for the disclosure of putative class members' personal data at this juncture of the litigation. *Pioneer Electronics, Inc. v. The Superior Court of Los Angeles,* 128 Cal.App.4th at 256, 27 Cal.Rptr.3d 17.

14

15

16

17

18

Palmer, 2005 WL 3868003, at *4.  Thus, the court found the documents were not relevant to the named plaintiffs' specific claims; were not necessary for class certification given the discovery already ordered; that the requests went against the previous order of the presiding judge specifying discrete discovery limits; and averred that even aside from those reasons, plaintiffs did not demonstrate a need to override privacy concerns:

19

20

21

22

23

24

25

26

In Lopez, the court found the discovery into a separate type of employee at the company was not proper as the types of employees were not similarly situated; that the extensive amount of discovery and the time to obtain it (i.e. burden of production which the Court discusses in the following section) did not justify the wholesale vast amount of discovery sought into the particular type of employee; and significantly, that the plaintiff could not serve as a class representative for the corporate employees, as plaintiff's claims gave no indication that these other type of employees have a cause of action; and indeed, the separate employees were of a different corporate entity, concluding plaintiff lacked standing in rejecting discovery:

27

28

> Plaintiff does not offer any more evidence than similar time keeping practices to show that PVH Neckwear's factory distribution clerks and PVH Corp.'s retail employees might be

22

similarly situated. As a result, the Court finds that Plaintiff has failed to make a showing that, without more, would require the Court to order pre-certification discovery. See Mantolete, 767 F.2d at 1424 (citation omitted).

Furthermore, the Court has considered the need and time required for the requested discovery, as well as the probability that such discovery will resolve any factual issues necessary for the determination of class certification. See Doninger, 564 F.3d at 1313. Plaintiff's interrogatories and requests for production require Defendants to turn over ostensibly vast amounts of information. Because Plaintiff has not shown that the discovery requested would even substantiate her class allegations, Plaintiff cannot justify requiring Defendant to expend the amount of time and effort that such discovery would require. Furthermore, Plaintiff's failure to make such a showing weighs against the need for such discovery. Based on these factors, the wholesale discovery Plaintiff seeks is premature at this point.

Plaintiff's use of Vinole . . . is unpersuasive . . . it is clear that Vinole does not stand for an absolute rule that courts are required to permit pre-certification discovery.

The Court also agrees with Defendant that Plaintiff cannot serve as a proper class representative for PVH Corp.'s employees. Rule 23's typicality requirement is lacking when "the plaintiff's cause of action ... is against a defendant with respect to whom the class members have no cause of action." La Mar v. H & B Novelty & Loan Co., 489 F.2d 461, 465 (9th Cir. 1973). This is true even when a plaintiff's cause of action is "similar to that of other members of the class." Id. The Court is unaware of any evidence that PVH Corp. employees might have a cause of action against PVH Neckwear. Therefore, under these circumstances, Plaintiff is not a proper class representative in a claim against PVH Corp. and cannot seek discovery as though she were.

Likewise, "a plaintiff who has no cause of action against [a] defendant cannot fairly and adequately protect the interests of those who do have such causes of action." La Mar, 489 F.2d at 466 (internal quotations omitted). While this rule does not apply when "all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious," these facts do not present such a case. Rather, the facts presented show PVH Neckwear employed Plaintiff and that PVH Corp. did not cause Plaintiff's harm. Thus, Plaintiff lacks a cause of action against PVH Corp. and "cannot fairly and adequately protect the interests of those who do have such causes of action." La Mar, 489 F.2d at 466.

Finally, Plaintiff is an improper representative of PVH Corp. employees because she lacks Article III standing to sue PVH Corp. Under Article III of the federal constitution, a defendant must have caused a plaintiff's injury before the plaintiff may bring a cause of action against that defendant. See Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–181 (2000). Plaintiff was not employed by PVH Corp., but by PVH Neckwear.

1
2
3
4

> Therefore, absent a showing that she was directly injured by PVH Corp., Plaintiff does not have the requisite standing to sue PVH Corp. See Henry v. Circus Casinos, 223 F.R.D. 541, 544 (D. Nev. 2004) ("[T]o establish Article III standing in a class action ... for every named defendant there [must] be at least one named plaintiff who can assert a claim directly against that defendant."). Without standing, Plaintiff is not entitled to discovery from PVH Corp.

5
6
7
8
9

Lopez, 2015 WL 13918888, at *1–2. Given the specific facts in Lopez, the Court does not find it convincing in counseling against the discovery here, particularly in light of the Court's further discussion of Melendres v. Arpaio, 784 F.3d 1254, 1262 (9th Cir. 2015) and related cases, infra Section IV(C)(3)(b).

10
11
12
13
14
15
16
17
18
19
20
21
22
23

Defendant argues the information it has already provided mitigates any need for contact information at this pre-certification stage. See McAdams, 2022 WL 993546. In McAdams, the defendant supplemented its discovery responses by producing a "spreadsheet [that] included each potential putative class members' '(1) loan number; (2) original loan amount; (3) unpaid balance of loan at time of foreclosure sale; (4) property state; (5) foreclosure sale date; (6) loan modification application submitted date; and (7) loan modification application decision date.' " 2022 WL 993546, at *1. In denying the motion to compel production of class names and contact information, the court found plaintiff failed to establish "why this information is insufficient for Plaintiff to bring her class certification motion," further noting that "Plaintiff's need for the personal contact information at this stage and the probability of that information resolving any factual issue necessary for the determination of class certification are low." Id. at *5 (internal quotation omitted). While somewhat persuasive, the Court finds the facts of McAdams, and the putative class there in relation to the named plaintiff's claims in that action, distinguishable from the action here:

24
25
26
27
28

> As an initial matter, the Court finds that Plaintiff's discovery request is overbroad and likely includes information with little if any relevance. Plaintiff seeks personal contact information for every person who submitted a loss mitigation application to Defendant and who were foreclosed upon from October 2017 to present day regardless of whether the person has a claim for violation of the Homeowner Bill of Rights ("HBOR") or fraud. MTC at 7. Defendant represents that determining which, if any of these potential class members has a dual tracking claim would require an "individualized file-by-file analysis of the individualized

1
2
3
4
5

> issues[,]" including the individuals' bankruptcy proceedings. Oppo. at 11. Plaintiff makes no effort to narrow the scope of her request by including terms or facts that would indicate possible HBOR or fraud claims. In addition, Plaintiff provides no evidence or explanation in support of her position that some, let alone a significant number of the 1,282 people "identified" in Defendant's spreadsheet, have viable fraud or HBOR claims. See MTC. At this stage of the litigation, producing the personal contact information for the 1,282 people is not proportional to the needs of the case.

6
7
8
9
10

McAdams v. Nationstar Mortg. LLC, No. 20CV2202-L(BLM), 2022 WL 993546, at *4 (S.D. Cal. Apr. 1, 2022).  Thus, significantly, the plaintiff in McAdams sought information from putative class members with no indication whether those potential members or a significant number actually had relevant claims to the class allegations.  That is inapposite to the absent class members here.  See also Pitt v. Metro. Tower Life Ins. Co., No. 20-cv-00694-BAS (DEB), 2021

11
12
13
14
15

U.S. Dist. LEXIS 113019, at *8-9 (S.D. Cal. June 16, 2021) ("Defendant argues production of anonymous policy data is sufficient for pre-certification purposes and disclosure of putative class members' contact information would violate various California privacy laws . . . [c]ourts, however, have routinely ordered pre-certification production of contact information for putative class members.") (citations omitted).

16
17
18
19
20
21
22
23
24
25
26
27

      Defendant further contends that proceedings in the cases upon which Plaintiff relies demonstrate Plaintiff's inconsistent arguments, as well as Plaintiff's lack of need for contact information, as both Siino v. Foresters Life Ins. & Annuity Co., Case No. 4:20-cv-02904-JST (N.D. Cal.), and Pitt v. Metropolitan Tower Life Ins. Co., Case No. 3:20-cv-00694-JO-DEB (S.D. Cal.) have reached the class certification stage; in both cases the plaintiffs are represented by the same counsel that represent Plaintiff in this action; in both cases, the plaintiffs compelled production of putative class contact information; in neither case did plaintiffs' counsel incorporate either surveys based on outreach to putative class members or declarations from individual class members into their class certification briefing; and Defendant submits there is no reason to believe that Plaintiff's counsel will do anything different here, emphasizing Plaintiff does not assert that she or her counsel actually intend to contact putative class members.  The Court cannot place great weight on what occurred in these actions.  Despite what counsel may or

28

may not have done with the discovery in other cases, such as whether they utilized surveys or declarations from absent class members following receipt of discovery, the Court finds sufficient showing under the relevant caselaw as applied to the complaint and proposed class in this action to support Plaintiff's position.

As for <u>Small v. Allianz</u>, Defendant responds the plaintiff there did made similar arguments as Plaintiff does here, concerning the potential defenses to class certification, and Defendant emphasizes the complaint allegations specific to the named Plaintiff here pertain to policies issued before January 1, 2013, similar to the issues the court found relevant in <u>Small</u>:

> Plaintiff first moves to compel further responses to Interrogatories 17, 19, 20 and 21, which request specific data for life insurance policies that Allianz Life Insurance Company of North America ("Allianz Life") issued both before and after the January 1, 2013 effective date of California Insurance Code sections 10113.71 and 10113.72 (the "Statutes"). The Court sustains Allianz Life's objections to producing information about life insurance policies issued after January 1, 2013. Plaintiff's discovery requests seeking information about policies issued after 2013 are overbroad and encompass matters that are not relevant to the claims or defenses in this case. The allegations in the Complaint pertain to the application of the Statutes to pre-2013 policies. In particular, the Small policy was issued before 2013 and plaintiff alleges that Allianz Life did not apply the Statutes to all policies issued before 2013. Allianz Life's discovery responses state that the company interpreted the Statutes as applying to policies issued after January 1, 2013. Allegations about errors in the way Allianz Life implemented changes to its practices and procedures to comply with the Statutes as to policies issued after 2013 would present different claims and injuries than those being pursued by Plaintiff.

<u>Small</u>, 2022 WL 3013097, at *1. The <u>Small</u> court also denied requests relating to contact information of class members:

> Plaintiff also moves to compel further responses to Interrogatories 17, 19, 20 and 21, to require Allianz Life to provide personal contact information of putative class members. The Court sustains Allianz Life's objections to *pre-certification* discovery of policyholder, insured, and beneficiary contact information. The Court finds that Plaintiff's stated reasons for requesting this information – inter alia, to prove that absent class members received (or failed to receive) the notices required by the Statutes – is not consistent with her theory of the case or the allegations in the Complaint; thus Plaintiff has not satisfied her burden of demonstrating a need for this information pre-certification. Other issues relating to Plaintiff's request for contact information, including security concerns raised by Allianz Life, will be deferred until after the Court has ruled on Plaintiff's motion for class

certification.

Small, 2022 WL 3013097, at *1.  The Court recognizes the similarities to the issues in Small.  However, for the reasons explained in greater detail as to Issue No. 2, and the further discussion of Melendres, 784 F.3d 1254 and related cases, infra Section IV(C)(3)(b), the Court does not find the difference between the pre and post-2013 policy issue as determinative as the court found in Small.  These issues are dissimilar to the more tenuous connections between the named plaintiff class representative and the discovery sought that as existed in, for example in Lopez or McAdams.  See Lopez, 2015 WL 13918888, at *1–2 ("Rather, the facts presented show PVH Neckwear employed Plaintiff and that PVH Corp. did not cause Plaintiff's harm."); McAdams, 2022 WL 993546 ("Plaintiff seeks personal contact information for every person who submitted a loss mitigation application to Defendant and who were foreclosed upon from October 2017 to present day regardless of whether the person has a claim for violation of the Homeowner Bill of Rights ('HBOR') or fraud.").  The Court does not go as far as to hold in agreement with Plaintiff that the Small decision was decided incorrectly, as the Court finds it a reasonable determination based on those circumstances under the relevant law and the discretion of the court on such discovery matters.  While the analysis may be sound, the opinion only totals six paragraphs in making the determination to deny all discovery requests, and the Court declines to wholly adopt the opinion as applied to the claims here, again, for the reasons explained herein, and the totality of the caselaw presented.

In Moreland, an opinion totaling 5 paragraphs, the court heavily focused on the aversion that the discovery was an improper attempt to obtain alternative or additional class representatives, and *is* relevant here because of the production of anonymized data there, as Defendant emphasizes:

> Defendant has already provided anonymized data about policyholders in the form of a 2,944-page spreadsheet showing the policy number, type, date, last premium paid, lapse date, and status of the insured. Under these circumstances, before class certification, discovery about the names and contact information about the putative class members is not appropriate. The Ninth Circuit in *Rushing v. Williams-Sonoma, Inc.*, 947 F.3d 535 (9th Cir. 2020), addressed a situation in which a plaintiff sought contact information about potential class members for the purpose of finding a class

representative before the class had been certified. There, the Court found that the discovery was not warranted under Fed.R.Civ.P. 26 even though the plaintiff argued that the discovery was also relevant to commonality, typicality, ascertainability, and reliance. *Id*. at 540. The Court rejected the plaintiff's argument that contact information was relevant to those issues and found instead that the plaintiff's attempt to find a potential class member did not justify disclosure. *Id*. Here, Plaintiff argues that the information he seeks is relevant to the same issues, but he provides no explanation why the information that Defendant has already provided is insufficient. Given that Plaintiff cannot justify the need for this level of detail about proposed plaintiffs, the motion to compel as response to Interrogatories Nos. 17 and 20 is DENIED.

<u>Moreland v. The Prudential Ins. Co. of America</u>, Case No. 20-cv-04336-RS(SK) (Dkt. No. 52) (N.D. Cal. July 13, 2022).  The Court is not convinced that Plaintiff is simply seeking another class representative in the absence of a showing of need for class certification, which was apparently the largest persuasive caselaw factor on the decision in <u>Moreland</u>.  There the court found plaintiff had provided "no explanation' why the information already provided was insufficient.

Accordingly, for the above reasons, the Court finds Plaintiff has demonstrated relevancy for the class discovery sought, and the Court finds the above caselaw supportive of granting Plaintiff's motion to compel.  Additionally and relatedly, for the reasons explained in the following subsections, Defendant has not shown a burden of production or other Rule 26(b) factors counsel against discovery, nor demonstrated that privacy concerns outweigh the need for the discovery in light of the existence of the protective order.

c.      **Rule 26 Factors**

The Court largely agrees with Plaintiff as to weighing of the factors under Rule 26(b)(1). Again, Rule 26 of the Federal Rules of Civil Procedure allows a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Defendant has not convincingly responded to Plaintiff's proffers that: (1) this information

is readily accessible and in an electronic sortable spreadsheet, and thus Defendant cannot demonstrate that the effort in producing the information would be disproportional to the needs of the case; (2) that Defendant has not quantified any purported burden in producing a discrete set of specific documents or data which Defendant itself created and is required to maintain; (3) that the documents are important to the issues at stake here–concerning over 34,000 policies Defendant improperly terminated without complying with the Insurance Code; and (4) the amount-in-controversy factor is satisfied.  See Fed. R. Civ. P. 26(b)(1).  Thus, Plaintiff has submitted a sufficient proffer demonstrating the properness of the discovery requests in light of the Rule 26(b) considerations.

   As to these arguments, Defendant responds that "[d]espite Plaintiff's uninformed speculation to the contrary, class member contact information is not 'available to send to Plaintiff tomorrow.' " (JS 13 n.3.)  However, other than this refutation of the Plaintiff's, perhaps more extreme than reality suggestion, Defendant does not suggest any specific alternative timeline at all; does not describe the actual process or what is involved in preparing this information to produce, generally nor directly in response to the fact this information is already available in anonymized form; nor information pertaining to how it is contained in non-anonymized form.  Defendant mounts no specific facts to counter Plaintiff's contentions regarding the Rule 26 factors.

   "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination."  Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment; see also Yphantides v. County of San Diego, No. 21CV1575-GPC(BLM), 2022 WL 3362271, at *7 (S.D. Cal. Aug. 15, 2022) (quoting Lofton v. Verizon Wireless (VAW) LLC, 308 F.R.D. 276, 281 (N.D. Cal. 2015) ("the party opposing discovery bears the burden of showing that discovery should not be allowed, and of clarifying, explaining, and supporting its objections with competent evidence.")).  Defendant has not demonstrated a burden of producing the sought discovery.  The Court finds Plaintiff has demonstrated the discovery is important to resolving the issues at stake in this class action, for the reasons discussed throughout this order, and the Court addresses privacy objections in the

following subsection.  Therefore, the Court finds consideration of the Rule 26(b) factors weighs in favor of granting Plaintiff's motion to compel.

### d.    Weighing of Privacy Concerns in Light of Protective Order

Federal law applies to the discovery in this diversity action; however, considerations of privilege and privacy direct the Court to consult California law.  See Rojas, 2020 U.S. Dist. LEXIS 29163, at *10-11 ("In diversity jurisdiction cases, federal courts can recognize a third-party's privacy rights under state law [and] courts in this Circuit generally apply the [California Supreme Court's] *Pioneer* test when discovery requests implicate the privacy rights of putative class members.") (citations and quotations omitted); Am. Prot. Ins. Co. v. Helm Concentrates, Inc., 140 F.R.D. 448, 449 (E.D. Cal. 1991) ("Although California substantive law in matters such as privilege may be persuasive, evidentiary matters in diversity actions are controlled by Federal and not California law."); Johnson, 2013 WL 11079297, at *2.

Johnson is informative in its discussion of the privacy standards under both federal and California law.  The Johnson court found the plaintiff had not sufficiently demonstrated a legitimate or compelling need for the information under the balancing analysis (touching upon differing standards), and had only most generically stated the need to prove the class factors. Further, the discussion of the opt-in procedure is informative given the parties here have provided no discussion of an opt-in or opt-out procedure as to this discovery, nor that they met and conferred on whether such procedure would alleviate potential privacy concerns pertaining to the absent class members:

> Both federal law and California's state law recognize a right to privacy. "Federal Courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests." *Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D.Cal.1995). "Resolution of a privacy objection or request for a protective order requires a balancing of the need for the information sought against the privacy right asserted." *Id.* While putative class members have privacy interests in their personal contact information, disclosure has been permitted where plaintiffs show a legitimate need. *Id. Nguyen v. Baxter Healthcare Corp.,* 275 F.R.D. 503, 507 (C.D.Cal.2011). In California, the right to privacy is set forth in 563 Article I, Section I of the California Constitution. California courts have treated the right to privacy as a privilege in the discovery context, and, as such, have determined it is a right subject to invasion depending upon the circumstances. *See,*

*e.g., Heller v. Norcal Mutual Ins. Co.,* 8 Cal.4th 30, 42–44, 32 (1994); *Hill v. National Collegiate Athletic Ass'n,* 7 Cal.4th 1, 37 (1994). Thus, "the privilege is subject to balancing the needs of the litigation with the sensitivity of the information/records sought." *Davis v. Leal,* 43 F.Supp.2d 1102, 1110 (E.D.Cal.1999); *see also Pioneer Elecs. v. Superior Court,* 40 Cal.4th 360, 371–75 (2007) (balancing privacy rights of putative class members with discovery rights of civil litigants). When privacy rights are involved, "the party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must be so strong as to outweigh the privacy right when these two competing interests are carefully balanced." *Lanz v. Superior Court,* 28 Cal.App. 4th 1839, 1853–54 (1994). So, under both federal and state law, the Court must balance the putative class counsel's need for the requested information against defendant's asserted objections, including the privacy rights of potential class members.

Here, to demonstrate their "compelling" or "legitimate" need for the subject discovery, plaintiffs make the general assertion that the information is relevant, that they have the right to conduct discovery on class certification issues, and that the information they seek is authorized. Plaintiffs state that they are "preparing for class certification and must establish numerosity, commonality, typicality and adequacy," but they do not explain how the information they seek will help them to establish any of these elements. Plaintiffs argue that the use of an opt-in procedure will prevent them from receiving the information before they file their motion for certification, but they never explain why the information is necessary, or even helpful, in the first place. Plaintiffs state that they have a "legitimate need" for this information, but they fail to articulate this need. Plaintiff's vague and unsupported assertion does not outweigh the privacy rights of potential class members.

In light of plaintiffs' failure to explain how the names and contact information of putative class members will assist plaintiffs in moving for class certification, the Court declines to order defendant to produce this information prior to a finding on class certification.

Johnson, 2013 WL 11079297, at *2–3. Thus,

There is some basis for Defendant's argument that Plaintiff only makes a slim showing of the need for the information in relation to the privacy interests, however, the Court finds the Plaintiff has made a sufficient showing of relevancy, despite the proffered privacy concerns. While Defendant here touches upon the privacy interests of the absent class members, Defendant's principal arguments regard the need for a *prima facie* showing and need for the information to substantiate class allegations, which the Court finds the caselaw supports Plaintiff on these points for the reasons discussed throughout this order.  Plaintiff has presented more than

1   a generic and routine statement that the information is relevant in relation to the privacy-weighing

2   factors.  See Johnson, 2013 WL 11079297, at *2–3.

3          Ultimately, the Court concludes Defendant has not demonstrated the privacy interests

4   outweigh the need for the discovery to convince the Court that such discovery is foreclosed,

5   particularly given Defendant has not addressed the presence or impact of the protective order at

6   all in the parties' briefing, and it appears the parties have not considered (at least not presented to

7   the Court) whether an opt-in or opt-out procedure and the potential to alleviate any privacy

8   concerns.  Thus given the presence of the protective order, the Court does not find the privacy

9   concerns outweigh the discoverability of the absent member contact information.

10         Courts have noted that the revelation of class contact information in of itself, does not

11  generally create a significant invasion of privacy rights:

12              Defendant have also objected to Plaintiff's discovery request on the
                basis of privacy, including specifically California's privacy laws.
13              The California Supreme Court has held that "[c]ontact information
                regarding the identity of potential class members is generally
14              discoverable, so that the lead plaintiff may learn the names of other
                persons who might assist in prosecuting the case." Pioneer
15              Electronics (USA), Inc. v. Superior Court, 40 Cal.4th 360, 373
                (2007).  The disclosure of putative class members' contact
16              information typically "involves no revelation of personal or
                business secrets, intimate activities, or similar private information,
17              and threatens no undue intrusion into one's personal life, such as
                mass-marketing efforts or unsolicited sales pitches." Id.  See
18              also Gulf Oil, 452 U.S. at 89–90 (district court abused its discretion
                by imposing ban on communications between counsel and any
19              potential class member without the court's prior approval; such an
                order involves serious restraints on the parties' First Amendment
20              rights to expression and should therefore be based on a clear record
                and specific findings reflecting a weighing of the need for a
21              limitation and potential interference with the parties' rights).

22  Wellens, 2014 WL 969692, at *3.  This has been recognized to be particularly true in cases

23  involving the violation of employment law with courts finding that such absent class members

24  would likely want to be informed or contacted if their employment rights were violated.  The

25  Maharaj court recently summarized the various considerations of federal and California law,

26  whether class members would want to be contacted in certain classes of cases, and the existence

27  of a protective order counseling against the need for an opt-in type notice to the absent class

28  members:

32

In diversity actions, a federal court will apply state law to questions of privilege, including the privilege of privacy. See In re California Pub. Utilities Comm'n, 892 F.2d 778, 781 (9th Cir. 1989); see also Fed. R. Evid. 501 ("But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). In California, the right to privacy is set forth in Article I, Section I of the California Constitution. Goro v. Flowers Foods, Inc., 334 F.R.D. 275, 286–87 (S.D. Cal. 2018). The California Supreme Court established a framework for assessing privacy claims in which "[t]he party asserting a privacy right must establish a legally protected privacy interest, an objectively reasonable expectation of privacy in the given circumstances, and a threatened intrusion that is serious." Williams v. Superior Ct., 3 Cal. 5th at 552 (citing Hill v. Nat'l Collegiate Athletic Assn., 7 Cal. 4th 1, 35–37 (1994)). "The party seeking information may raise in response whatever legitimate and important countervailing interests disclosure serves, while the party seeking protection may identify feasible alternatives that serve the same interests or protective measures that would diminish the loss of privacy." Id. The court then balances these considerations. Id. (citing Hill v. Nat'l Collegiate Athletic Assn., 7 Cal. 4th at 37–40).

The California Supreme Court has noted with approval other courts' applications of the privacy framework in wage and hour class actions and collective actions in which they found that "fellow employees would not be expected to want to conceal their contact information from plaintiffs asserting employment law violations, the state policies in favor of effective enforcement of these laws weigh on the side of disclosure, and any residual privacy concerns can be protected by issuing so-called *Belaire-West* notices affording notice and an opportunity to opt out from disclosure." Id. at 553. "Generally, federal courts in this circuit have held that a protective order, in lieu of a *Belaire-West* notice, sufficiently protects putative class members and aggrieved employees' privacy interests in the confidentiality of their contact information." Amaraut v. Sprint/United Mgmt. Co., 2020 WL 8024170, at *7 (collecting cases).

Here, the Court finds that the putative class members' contact information is discoverable and not barred by privacy. Defendant has made no arguments in support of its single contention that the requested contact information would violate third-party privacy and be unduly harassing. The Court finds that although putative class members have a legitimate privacy interest in their contact information, they would not be expected to want to conceal their contact information from Plaintiff who is asserting employment law violations on behalf of the putative members. Williams v. Superior Ct., 3 Cal. 5th at 553–54. The Court also finds that there is no serious invasion of privacy because the parties can enter into a stipulated protective order subject to the Court's approval. See Amaraut v. Sprint/United Mgmt. Co., 2020 WL 8024170, at *7; Austin v. Foodliner, Inc., No. 16CV07185HSGDMR, 2018 WL 1168694, at *3 (N.D. Cal. Mar. 6, 2018) (holding that a protective order is sufficient to protect the privacy interests of putative class members and aggrieved

1
2
3
4

> employees in their contact information and that a <u>Belaire-West</u> notice is therefore not required). The Court finds that a protective order instead of a <u>Belaire-West</u> notice is appropriate here.[8] See <u>Amarauth v. Sprint/United Mgmt. Co.</u>, 2020 WL 8024170, at *7; <u>Austin v. Foodliner, Inc.</u>, 2018 WL 1168694, at *3. Accordingly, the Court overrules Defendant's objections as to third-party privacy and harassment.

5   <u>Maharaj</u>, 2021 WL 1428489, at *9–10.

6   As part of the Defendant's objections on privacy grounds, Defendant directs the Court to

7   California Insurance Code § 791.13.   This provision   prohibits an insurance company from

8   disclosing any "personal or privileged information about an individual collected or received in

9   connection with an insurance transaction" unless authorized by the individual or an exception

10   applies.  Cal. Ins. Code § 791.13; <u>see also</u> <u>Shirley v. Allstate Ins. Co.</u>, No. 18CV994 AJB (BGS),

11   2019 WL 3208000, at *3 (S.D. Cal. July 16, 2019).   "Personal information" is defined to

12   "include[] an individual's name and address."  Cal. Ins. Code § 791.02.

13   However, the existence of the California statute is not determinative to the privacy issues,

14   as the statute allows for disclosure where: "(g) [o]therwise permitted or required by law"; or "(h)

15   [i]n response to a facially valid administrative or judicial order, including a search warrant or

16   subpoena."   Further, as mentioned above, Defendant did not address Plaintiff's arguments

17   concerning the adequacy of the protective order in place in this action, nor even mention the

18   existence of the protective order.   (<u>See</u> ECF No. 52.)  Defendant's silence in this regard is

19   significant because Courts routinely find that a protective order is sufficient to guard against

20   intrusions into privacy interests in class member information.   See, e.g., <u>Wellens</u>, 2014 WL

21   969692, at *3 ("Defendant has not explained why the protective order here would not protect its

22   concerns about its employees' privacy with respect to the disclosure of putative class members'

23   names and contact information."); <u>Rojas</u>, 2020 U.S. Dist. LEXIS 29163, at *11-12  ("Numerous

24   courts in this Circuit have concluded that a plaintiff's discovery needs outweigh putative class

25   members' privacy interests in their contact information, particularly where production of the

26   contact information is safeguarded by a protective order or other appropriate measure . . . [and]

27   Bosch has not cited a single decision in which discovery of putative class members' contact

28   information was denied on privacy grounds.").

1    Defendant has not made any contention, let alone supported contention, that Plaintiff's

2    counsel may do something improper with the information, or that the protective order would not

3    be sufficient in such regard.  See Aldapa, 310 F.R.D. at 588 ("Defendants contend that Plaintiffs

4    cannot be trusted to comply with the terms of the protective order, but offer no persuasive reasons

5    supporting their concern.").  The Court has balanced the rights of privacy against the proffered

6    reasons for obtaining it, and finds the balance weighs in favor of allowing the discovery, as

7    subject to the protective order.  See Putnam, 508 F. Supp. 2d at 814 ("While defendant is correct

8    that individuals have a privacy interest in not having their names and addresses disclosed to third

9    parties, the Court has balanced defendant's asserted right to privacy against the relevance and

10   necessity of the information being sought by plaintiff . . . [t]he need is especially compelling here

11   where the information to be disclosed concerns not disinterested third parties, but rather potential

12   plaintiffs themselves [and] [t]his information must be disclosed to enable plaintiff to proceed; a

13   protective order can strike the appropriate balance between the need for the information and the

14   privacy concerns."); Gamino, 2021 U.S. Dist. LEXIS 109358, at *7-8 (same).

15   Finally, the Court considers that on one hand, like in the employment context, absent class

16   members would likely want to be informed of violations of law pertaining to their insurance

17   policies.  On the other hand, the Court considers the potential different privacy interests at stake,

18   including connections to financial information.  In the employment context, the discussion in

19   Rojas of protective orders, and an opt-in procedure, is helpful in considering the differences

20   between the privacy considerations where personal financial information is involved rather than

21   simply contact information for employees whose rights may have been violated:

22           Bosch argues that the Stipulated Protective Order "does not comply
             with California law" because Judge Cousins did not apply
23           the *Pioneer* balancing test. *See* Motion for Relief at 4-5, ECF 79.
             As an initial matter, federal question jurisdiction lies in this case, as
24           Plaintiffs assert a claim under the Magnuson-Moss Warranty Act,
             MMWA"), 15 U.S.C. § 2310. *See* Second Am'd Compl., ECF 53.
25           Consequently, it is not clear whether *Pioneer* applies.  Even
             assuming it does, Bosch has not demonstrated that Judge Cousins'
26           issuance of the Stipulated Protective Order is at odds with *Pioneer*.
             Numerous courts in this Circuit have concluded that a plaintiff's
27           discovery needs outweigh putative class members' privacy interests
             in their contact information, particularly where production of the
28           contact information is safeguarded by a protective order or other

appropriate measure. *See, e.g., Goro v. Flowers Foods, Inc.*, No. 17-CV-02580-JLS-JLB, 334 F.R.D. 275, 2018 U.S. Dist. LEXIS 140073, 2018 WL 3956018, at *10 (S.D. Cal. Aug. 17, 2018) [*12] (compelling production of putative class members' contact information where information was subject to a protective order and the plaintiffs' counsel was required to inform each putative class member of the right not to talk to counsel); *McEwan*, 2016 U.S. Dist. LEXIS 42798, 2016 WL 1241530, at *4 (finding that disclosure of contact information did not constitute a serious invasion of privacy interests, and any confidentiality concerns were addressed by protective order); *Cholakyan*, 2011 U.S. Dist. LEXIS 154368, 2011 WL 7575379, at *7 (finding that the plaintiff's right to pursue the lawsuit outweighed privacy rights of putative class members and noting that production was governed by protective order). Bosch has not cited a single decision in which discovery of putative class members' contact information was denied on privacy grounds.

Bosch contends that any discovery of contact information should be subject to a *Belaire-West* notice. In *Belaire-West*, a California appellate court held that third-party privacy concerns were addressed by a notice informing putative class members that they could opt out if they did not want their contact information disclosed to the plaintiff's attorneys. *See Belaire-West*, 149 Cal. App. 4th at 561. While such a notice could be used in this case, Bosch has not demonstrated that Judge Cousins erred by failing to require a *Belaire-West* notice. To the contrary, "[t]he predominant practice among courts in the Northern District of California is to allow pre-certification discovery of putative class members' confidential contact information subject to a protective order, without requiring a *Belaire-West* notice. *Austin v. Foodliner, Inc.*, No. 16-cv-07185-HSG (DMR), 2018 U.S. Dist. LEXIS 36685, 2018 WL 1168694, at *2 (N.D. Cal. Mar. 6, 2018) (internal quotation marks, citation, and alteration omitted). "Courts in this district generally have required *Belaire-West* notices only when there are special privacy concerns, such as the disclosure of medical or financial information, and/or when the parties have agreed to such notice." *Id.* Bosch has failed to show that special privacy concerns exist in the present case.

Rojas, 2020 U.S. Dist. LEXIS 29163, at *11-13; see also Goundar, 2014 WL 12524649, at *3.

This Court has previously ordered class discovery subject to an opt-out procedure, in rejecting a party's request for an *opt-in* procedure through adjudication of a motion to compel concurrent with a motion for a protective order.  Aldapa, 310 F.R.D. at 587 ("Defendants here propose an 'opt-in' procedure whereby contact information would be withheld unless employees affirmatively consent to share their contact information[,] [however,] the 'opt-in' procedure will likely hamper Plaintiffs efforts to substantiate its claims, as common sense suggests that 'opt-in' responses will be artificially low due to recipients having little desire to put forth the effort to

respond [and] [i]n this  case, the privacy interests of putative class members are adequately protected by an 'opt-out' procedure.").  The Court considered whether an opt-out procedure would be appropriate in this case, and whether the Court should grant the motion to compel subject to further meet and confer on the feasibility of such, and if Defendant was compelled, whether Defendant would prefer producing such discovery subject to an opt-out procedure. However, in light of the fact Defendant has made *no mention* of the protective order, and no mention of an opt-out procedure, the Court concludes the discovery is appropriate subject to the protective order, as other cases have found.  Specifically, the Court finds the decision in <u>Pitt</u>, relevant here in its rejection of the defendant insurance carrier's objection that the discovery was already sufficiently provided through anonymous policy data, and rejected the need for an opt-out procedure in light of the protective order in place:

> Defendant argues production of anonymous policy data is sufficient for pre-certification purposes and disclosure of putative class members' contact information would violate various California privacy laws. Dkt. 35 at 7-8. Courts, however, have routinely ordered pre-certification production of contact information for putative class members. [citations] . . .
>
> Although the California Supreme Court approved a pre-certification opt-out procedure (where putative class members receive notice and an opportunity to opt-out before their contact information is disclosed), *see Pioneer Elecs. (USC), Inc. v. Superior Court*, 231 F.R.D. 407, 409, 371-75 (2007), the Court finds this procedure unnecessarily time-consuming and burdensome here. The Court agrees with Judge Westmore's Order in *Siino v. Foresters Life Ins. and Annuity Co.*, No. 20-cv-2904 (N.D. Cal. Dec. 10, 2020) (attached as Exhibit A to the Joint Motion) and finds the existing Protective Order adequately protects the privacy of putative class members' contact information. *See* Dkt. No. 19. Defendant, therefore, must produce the putative class members' names and contact information designated as "CONFIDENTIAL" under the existing Protective Order; and Plaintiff must comply with all restrictions governing the handling and disclosure of confidential information.

<u>Pitt v. Metro. Tower Life Ins. Co.</u>, 2021 U.S. Dist. LEXIS 113019, at *8-9.

For all of the above reasons, the Court finds in favor of Plaintiff as to the substantive issues surrounding Issue No. 1, and overrules Defendant's objections to providing information pertaining to the absent class members.

/ / /

1    **C.     Disputed Issue No. 2: Policies Issued on or After January 1, 2013**

2        1.     Plaintiff's Arguments as to Issue No. 2

3        Plaintiff proffers her claims concern policies subject to the Statutes' protections regardless

4    of issue date, as the proposed class definition in the complaint includes: "All past, present, and

5    future owners or beneficiaries of Defendant's individual life insurance policies in force on or after

6    January 1, 2013 and governed by Sections 10113.71 and/or 10113.72."  (ECF No. 1 at 12.)

7    Plaintiff alleges Defendant has not complied with the Statutes as to any in-force policies,

8    including policies issued after January 1, 2013.  Despite this class definition, Plaintiff contends

9    Defendant has unilaterally dismissed 2013 (and later) policies from this case by refusing to

10   provide discovery as to those policies, based on what is, at bottom, a "standing" argument.

11   Plaintiff frames Defendant's position as that because Plaintiff's policy was issued before 2013,

12   she cannot possibly represent, and has no "standing" to represent, owners of policies issued in or

13   after 2013.  Plaintiff submits that Defendant's objection is erroneous and must be overruled for

14   several reasons.

15       First, Plaintiff directs the Court to the California Supreme Court decision in McHugh

16   where the court rejected any attempts to distinguish life insurance policies based on date of

17   issuance and thus all California life insurance policies are entitled to receive the Statutes'

18   protections regardless of date of issuance.  McHugh v. Protective Life Ins. Co., 12 Cal. 5th 213,

19   220, 494 P.3d 24, 27–28 (2021).  Second, Plaintiff argues Defendant's position conflates standing

20   concepts with class certification, as the Ninth Circuit's ruling in Melendres clarifies the relevant

21   differences.  Melendres, 784 F.3d at 1262.  Plaintiff contends Defendant is making premature

22   "standing" arguments to try to block discovery, and such arguments are better left directed at the

23   class certification inquiry.  Plaintiff proffers that the sought discovery is specifically designed to

24   assist with the class certification inquiry, and stated differently, the appropriate time to determine

25   the typicality, adequacy, and the other class certification prerequisites is by a class certification

26   motion submitted after discovery, not in a ruling on discovery, and requests the Court overrule

27   Defendant's objections and compel further responses to Interrogatory Nos. 17, 19, 20 and 21, and

28

1  to Request No. 34, to include all policies governed by the Statutes, regardless of issue date.[5]

2      2.    Defendant's Arguments as to Issue No. 2

3      Defendant proffers Plaintiff's claim is predicated upon allegations Defendant did not

4  apply the Statutes to policies, like the one as to which Plaintiff was a named beneficiary, issued

5  prior to 2013, and the complaint contains allegations about the alleged noncompliance with

6  respect to her policy.  Defendant contends the complaint is devoid of any factual allegations that

7  Defendant failed to comply with the Statutes for policies issued *after* January 1, 2013, but

8  nevertheless, Plaintiff relies on her class definition to inappropriately broaden the scope of

9  discovery.

10      Defendant submits uncontroversial caselaw for the proposition Plaintiff is not entitled to

11  discovery that goes beyond the claims alleged in the Complaint.  Coleman v. Quaker Oats Co.,

12  232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the

13  defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's

14  allegations."); Martinelli v. Johnson & Johnson, No. 215CV1733MCEEFBTEMP, 2016 WL

15  4055040, at *2 (E.D. Cal. July 28, 2016) ("Plaintiff argues that the information sought by these

16  requests is relevant to class certification because Plaintiff must demonstrate that each element of

17  each claim can be proven with evidence common to the class . . . [m]any of these requests,

18  however, seek discovery beyond the complaint's allegations concerning Benecol Spreads' claims

19  of 'No Trans Fats,' and 'No Trans Fatty Acids.' "); Trabulsi v. Wells Fargo Bank, Nat'l Ass'n,

20  No. 817CV02088JLSSK, 2018 WL 6444892, at *1 (C.D. Cal. Aug. 21, 2018) ("To be sure, the

21  allegations in a complaint generally dictate what evidence is discoverable.").

22      Defendant proffers it has represented in verified discovery responses and under oath at a

23  deposition, that in 2013, it implemented a compliance project for all individual life insurance

24  policies issued or delivered in California on or after January 1, 2013, that included: (1)

25  administering a grace period of at least 60 days; (2) mailing notice of pending lapse at least 30

26  days before lapse (to the policyowner and any secondary designee); (3) mailing notice of unpaid

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [5]  Plaintiff also incorporates overlapping arguments made above in the prior section regarding the breadth of the
28  relevance inquiry under Rule 26, the proportionality factors, and how the protective order is sufficient to safeguard
   any limited privacy rights the Defendant is citing in its objections.

39

1    premium within 30 days after initial unpaid premium (to the policyowner and any secondary

2    designee); (4) providing notice at the time of application of the opportunity to designate a

3    secondary addressee to receive notices of lapse or termination of a policy for nonpayment of

4    premium; and (5) providing notice on an annual basis of the opportunity to designate a secondary

5    addressee to receive notices of lapse or termination of a policy for nonpayment of premium.

6    Defendant contends these actions are the statutory requirements that Plaintiff contends Defendant

7    violated for her policy (and for other policies that were issued before January 1, 2013), however,

8    there is no such violation for policies issued after January 1, 2013, and Plaintiff cannot credibly

9    allege statutory violations based on the information provided by Defendant to Plaintiff.

10       In this regard, Defendant again relies on Small, highlighting the court there recently

11   declined to compel the production of information regarding post-2013 policies and held such

12   information was not discoverable.  Small, 2022 WL 3013097, at *1.  Defendant argues the

13   analysis applies with equal force here: Plaintiff's policy was issued *before* 2013; Plaintiff alleges

14   Defendant did not apply the Statutes to policies issued *before* 2013; and as discussed below,

15   Defendant has produced verified interrogatory responses and deposition testimony describing its

16   implementation of a compliance project for all individual life insurance policies issued or

17   delivered in California *on or after* January 1, 2013.  Defendant submits to the Court that

18   allegations about nuanced, perceived deficiencies in the way Defendant implemented the

19   statutory requirements for *post*-2013 policies "would present different claims and injuries than

20   those being pursued by Plaintiff," and the discovery must be denied.[6]

21       Next, as for Plaintiff's focus on Melendres, regardless of whether viewed as a class

22   certification or a standing issue, Defendant takes the position that Melendres does not address

23   whether a named plaintiff is entitled to obtain broad discovery relating to injuries that she has not

24   suffered.   Defendant emphasizes language in Melendres stating that adopting the class

25   certification approach merely "*shift[s] the focus* of examination from the elements of justiciability

26   to the ability of the named representative to fairly and adequately protect the interests of the

27   class."  784 F.3d at 1262 (internal quotations omitted).  Defendant contends the focus therefore

28   _____

[6] Defendant next argues a lack of meet and confer as to Issue No. 2, that the Court addresses below.

1   shifts to typicality and adequacy, but Plaintiff's claims are not typical of and not adequate to

2   prove the claims of policyholders whose policies were issued on or after January 1, 2013, and she

3   is thus not entitled to such discovery.   Wilson v. Conair Corp., No. 1:14-cv-00894-WBS-SAB,

4   2015 WL 1994270, at *6 (E.D. Cal. Apr. 30, 2015) (analyzing typicality and denying discovery

5   for claims dissimilar to that of the named plaintiff); Soto v. Castlerock Farming and Transport,

6   Inc., 282 F.R.D. 492, 503 (E.D. Cal. 2012) (finding the named plaintiff was "not entitled to

7   discovery for the claims he is unable to pursue").   Defendant also argues that conversely, in

8   Rahmatullah v. Charter Comm's, LLC, No. ED CV 20-354-PSG (SPx), 2021 WL 1593242 (C.D.

9   Cal. Mar. 25, 2021), on which Plaintiff "also curiously relies," the court held that a named

10  plaintiff was not entitled to discovery as "courts will not allow a fishing expedition where it is

11  apparent that [p]laintiff cannot maintain the action on behalf of the class," and noted that the

12  plaintiff would not be able to discovery of policies and procedures for employees who were not

13  similarly situated to him with respect to his reimbursement claims.  Id. at *4.  Defendant suggests

14  that it is the same in this case, in that Plaintiff has "offer[ed] no additional evidence or argument,

15  other than speculation, that his discovery requests [would] likely produce persuasive evidence of

16  company-wide wrongdoing."  Id.

17       3.    The Court's Ruling on Issue No. 2

18       For the reasons explained below, the Court finds in favor of Plaintiff as to Issue No. 2.

19       **a.    Preliminary Issue of Meet and Confer on Issue No. 2**

20       Defendant proffers that during teleconferences throughout the meet and confer process,

21  defense counsel discussed producing data relating only to pre-2013 issued policies.  (Reilly Decl.

22  ¶ 5.)  On or about July 11, 2022, the parties met and conferred over telephone with respect to the

23  outstanding discovery disputes between them, and Defendant states Plaintiff's counsel reiterated

24  that Plaintiff would permit and consider a verified supplemental interrogatory response outlining

25  its compliance for post-2013 policies.  (Id. at ¶ 6.)  On July 19, 2022, Defendant served its

26  Second Supplemental Responses and Objections to Plaintiff's Interrogatories, Set One, which set

27  forth its compliance with the Statutes for policies issued on or after January 1, 2013, in a Second

28  Supplemental Response to Plaintiff's Interrogatory No. 3.  (Id. at ¶ 7, Ex. 2.)  Defendant contends

that Plaintiff's counsel did not express dissatisfaction with this response and did not re-engage with counsel for Defendant on this point before filing the present motion.  (Id. at ¶ 8.)  Defendant contends it did not hear from Plaintiff's counsel on this point until the instant motion to compel was filed.

On August 23, 2022,[7] in light of Defendant's position that Plaintiff had not exhausted the meet and confer process (and had proceeded inconsistently with what Defendant believed to be the parties' agreement on this issue), Defendant approached Plaintiff with additional suggestions on how to resolve this issue.  (Decl. Kate Villanueva ("Villanueva Decl.") ¶ 6, ECF No. 52-3 at 1.)  For example, Defendant suggested that Plaintiff identify additional information that would resolve Plaintiff's interest in broad data and/or information regarding policies issued on or after January 1, 2013; Plaintiff agreed to consider this proposal and send to Defendant the additional category(ies) of information that Defendant may consider including in a revised written discovery response or declaration; Defendant proffers it awaits this proposal from Plaintiff and is reasonably confident that the parties may be able to resolve the Motion to Compel as it relates to policies issued on or after January 1, 2013; and thus for these reasons, argues Plaintiff's Motion to Compel on this point is premature and is an unnecessary expenditure of judicial resources.  (Villanueva Decl. ¶¶ 6-8.)

In response, Plaintiff disputes Defendant's "mischaracterization" of the meet and confer history over this issue.  (Tomasevic Decl., ¶¶ 3-5.)  Plaintiff's counsel states counsel first started meeting and conferring with defense counsel over this issue in March; in early April counsel had further meet and confers, including in writing where Plaintiff's counsel cited the Melendres opinion cited in the joint statement; "[a]nd while, at one point many months ago, I challenged defense counsel to convince me that there were no violations among the 2013 and later insurance policies, and that, therefore, there was no point to discovery, they never did so."  (Tomasevic Decl., ¶¶ 3.)  Plaintiff's counsel further proffers that "Defendant's Second Supplemental Responses unilaterally served many months later are irrelevant and raise more questions than

---

[7]  Again, the motion to compel was filed on August 1, 2022; the hearing on the motion was continued pursuant to the parties' stipulation on August 11, 2022; the joint statement was filed on August 24, 2022; and on September 6, 2022, the Court vacated the continued September 7, 2022 hearing.  (ECF Nos. 46, 50, 52, 53.)

answers, as I have shared with Defense Counsel." (Id. ¶ 4.)  Specifically, Plaintiff contends that: (1) the "response merely says that 'in 2013' Allstate 'implemented a compliance project' apparently aimed at satisfying [t]he Statutes[,] [b]ut compliance was required as of January 1, 2013[,] [and] [t]he fact that Allstate started their compliance project sometime in 2013 (and, of course, Allstate does not say when in 2013), only serves to confirm that Allstate was not ready to comply by January 1, 2013, as [t]he Statutes required."  Plaintiff contends this is not a small oversight because of the size of Allstate and the many policies it issues and lapses every month, and other discovery has since confirmed that Defendant did issue policies in 2013 that did not include all the Statutes' mandatory components upon issuance.  (Id.)  Additionally, Plaintiff notes that "Allstate's second supplemental response, drafted by counsel, carefully states that it started 'administering' 60-day grace periods of at least 60 days sometime in 2013[, and] [e]ven if true, and even if rolled out by January 1, 2013 (which we know is not the case), this would not satisfy [t]he Statutes because they require policies to expressly 'contain' a 60-day grace 'provision.' " (Id. ¶ 5, citing Cal. Ins. Code., § 10113.71(a).)  Plaintiff submits that secret and internal administrative grace periods do not satisfy the Statutes because, among other reasons, secret administrative practices are not enforceable the same way a written contract term is, and that is why the Legislature expressly mandated that policies "contain" 60-day grace periods.  (Id.) Plaintiff submits that for this and other reasons, Defendant's Second Supplemental Response only further proves that 2013 (and possibly later) insurance policies are properly alleged to be part of the putative class and that, in turn, the discovery is relevant and appropriate.

The Court finds that the parameters of the issues developed as currently briefed and presented to the Court, signify sufficient meet and confer for the Court to weigh the parties' respective positions and make a decision as to Issue No. 2, particularly given no other indication has been presented to the Court that further meet and confer has resolved any outstanding issue.

**b.      The Court Finds in Favor of Plaintiff on the Substantive Issues**

In 2021, the California Supreme Court held all California life insurance policies are entitled to receive the Statutes' protections regardless of date of issuance:

In 2012, the Legislature created certain protections to shield

43

consumers from losing life insurance coverage because of a missed premium payment. Codified in sections 10113.71 and 10113.72 of the Insurance Code, these protections went into effect on January 1, 2013. Soon thereafter, the defendant terminated one of the life insurance policies at issue in this case because the policy owner had failed to make a payment. Plaintiffs claim that the defendant had no right to terminate these policies without complying with the newly codified statutory protections against termination. The Court of Appeal reasoned that sections 10113.71 and 10113.72 did not apply because they appeared to affect only policies issued or delivered after the sections' January 1, 2013 effective date, and the policy at issue here predated the sections. In reaching this construction of the statutes, the court cited — among other considerations — its deference to Department of Insurance (DOI) staff correspondence and electronic instructions for policy forms.

We conclude that sections 10113.71 and 10113.72 apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued. This interpretation fits the provisions' language, legislative history, and uniform notice scheme, and it protects policy owners — including elderly, hospitalized, or incapacitated ones who may be particularly vulnerable to missing a premium payment — from losing coverage, consistent with the provisions' purpose. This interpretation does not depend on extending deference to DOI staff correspondence or electronic instructions, neither of which represent the agency's official interpretation of sections 10113.71 and 10113.72 nor otherwise reflect the agency's carefully considered, long-standing, and consistent interpretive viewpoint on the sections. Accordingly, we reverse the judgment of the Court of Appeal and remand for proceedings consistent with this opinion.

McHugh, 12 Cal. 5th at 220. Plaintiff's argument based on McHugh alone gives the Court pause in considering Defendant's objections, given Defendant did not respond at all to Plaintiff's reference of the case. The holding of McHugh in conjunction with Melendres and related caselaw, directs the Court to find sufficient similarity between the proposed class definition encompassing pre and post-2013 policies, and the proposed class representative here.

The Court now turns to the specific allegations in Plaintiff's complaint that supports the Court's findings below in relation to Melendres. Plaintiff generally argues that she alleges Defendant has not complied with the Statutes as to *any* in-force policies, including policies issued after January 1, 2013. (JS 19.) Plaintiff's complaint alleges the "Statutes are regulatory in nature and contain no grandfather provisions limiting their application only to policies first issued or delivered after January 1, 2013 [and] [r]ather, they apply to all policies still in existence as of January 1, 2013. (Compl. ¶ 20.) Plaintiff alleges "[d]espite early knowledge of the Statutes and

44

their mandates, since January 1, 2013, Defendant has failed to comply with the Statutes." (Compl. ¶ 24.)   Under the section entitled Class Action Allegations, Plaintiff alleges that "Plaintiff is informed and believes that Defendant has not, since at least January 1, 2013, properly complied with the provisions of Insurance Code Sections 10113.71 and/or 10113.72[,] [and] [s]ince that time, Defendant has failed and continues to fail to provide these protections to policy owners, assignees and their beneficiaries." (Compl. ¶ 36.)

The complaint defines the proposed class as follows: "All past, present, and future owners or beneficiaries of Defendant's individual life insurance policies in force on or after January 1, 2013 and governed by Sections 10113.71 and/or 10113.72, where the policies underwent or will undergo lapse, termination, and/or reinstatement without Defendant first providing written notice of and an actual 60-day grace period, a 30-day notice of pending lapse and termination, and/or an annual notice of a right to designate at least one other person to receive notice of lapse or termination of a policy for nonpayment of premium." (Compl. ¶ 41.) Plaintiff's complaint further submits that, as for typicality, "Plaintiff's claims are typical of the claims of the members of the Class and sub-class because Plaintiff and each member of the Class and subclass were victims of the same statutory violations [and further] are typical of the claims of her fellow Class members, which all arise from the same operative facts involving the Defendant's unlawful violations of Sections 10113.71 and 10113.72." (Compl. ¶ 47.)

Plaintiff argues Defendant's position conflates standing concepts with class certification, and that in Melendres, the court rejected the standing arguments made here by Defendant. Defendant argues Defendant emphasizes language in Melendres stating that adopting the class certification approach merely "*shift[s] the focus* of examination from the elements of justiciability to the ability of the named representative to fairly and adequately protect the interests of the class." 784 F.3d at 1262 (internal quotations omitted). The Court first excerpts the portion of the opinion highlighted by Defendant. There, the Ninth Circuit was quoting the Supreme Court in affirming the Ninth Circuit has adopted the class certification approach:

For example, in *Sosna,* the Supreme Court held that

[a] named plaintiff in a class action must show that the

threat of injury in a case ... is "real and immediate," not "conjectural" or "hypothetical." ... This conclusion [that plaintiff has standing] does not automatically establish that appellant is entitled to litigate the interests of the class she seeks to represent, but it *does shift the focus* of examination from the elements of justiciability to the ability of the named representative to "fairly and adequately protect the interests of the class."

419 U.S. at 402–03, 95 S.Ct. 553 (emphasis added, citations and internal quotation marks omitted). Under the class certification approach, therefore, "any issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to standing." NEWBERG ON CLASS ACTIONS § 2:6; *see also Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 155–61, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (treating dissimilarities in injuries between named and unnamed plaintiffs as an issue of class certification under Rule 23(a) rather than one of standing). Stated differently, "[r]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." 7AA CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1785.1 (3d ed.).

Melendres, 784 F.3d at 1262 (quoting Sosna v. Iowa, 419 U.S. 393, 402-03 (1975)).   The language highlighted by Defendant does not sway the Court's findings below.  The Court finds no significant reason to find the class representative here unable to fairly and adequately protect the interests of the proposed class.  Id.

In Melendres, plaintiffs had brought a class action for declaratory and injunctive relief alleging defendants had a policy of racial profiling Latino driver and passengers.  Id. at 1258. Plaintiffs alleged defendants implemented the policy primarily during "saturation patrols," or "crime suppression sweeps," in which defendant officers would saturate a particular area and sweep it, "under the auspices of enforcing federal and state immigration-related laws."  Id. Plaintiffs alleged defendants' discriminatory policy extended to the post-stop investigatory process, resulting in longer and more burdensome detentions for Latinos than for non-Latinos, violating constitutional and statutory law.  Id.

Defendants in Melendres argued that "the named plaintiffs lacked standing to represent the claims of unnamed class members who were stopped, detained, or searched outside of a

saturation patrol effort." Id. at 1261.  One named plaintiff was alleged to have been stopped outside of such type of patrol, but defendants argued that particular plaintiff had failed to state a claim:

> The parties agree the Rodriguezes were the "only named plaintiffs who were stopped outside of a saturation patrol." Defendants argue that none of the evidence presented on the Rodriguez stop establishes a Fourth or Fourteenth Amendment violation, much less a pattern or practice of MCSO's violating the Fourteenth Amendment. Therefore, Defendants argue, no named plaintiff has standing to assert the claims related to stops outside saturation patrols. They thus ask us to decertify partially the class and vacate the injunction "as to all activities outside of saturation patrols."

Id. at 1261.

The Ninth Circuit found the defendants' arguments conflated standing and class certification, a distinction the Ninth Circuit noted was not always easy to discern. The Ninth Circuit explained the difference between the standing and the class certification contexts:

> The difficulty with Defendants' argument is that it conflates standing and class certification. Although both concepts "aim to measure whether the proper party is before the court to tender the issues for litigation, ... [t]hey spring from different sources and serve different functions." 1 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 2:6 (5th ed.). *Standing* is meant to ensure that the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate. *Class certification,* on the other hand, is meant to ensure that named plaintiffs are adequate representatives of the unnamed class. Unfortunately, when courts have found a disjuncture between the claims of named plaintiffs and those of absent class members, they have not always classified the disjuncture consistently, some referring to it as an issue of standing, and others as an issue of class certification. *Id.* Nor is the distinction always easy to discern. Even the Supreme Court has apparently applied both approaches inconsistently. *Id.; see also Gratz v. Bollinger,* 539 U.S. 244, 263 n. 15, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003) (observing the "tension" in the Court's prior cases as to whether the similarity of injuries suffered by the named plaintiff and the unnamed class members is "appropriately addressed under the rubric of standing or adequacy").
>
> The "standing approach" treats dissimilarities between the claims of named and unnamed plaintiffs as affecting the "standing" of the named plaintiff to represent the class. In other words, if there is a disjuncture between the injuries suffered by named and unnamed plaintiffs, courts applying the standing approach would say the disjuncture deprived the named plaintiff of standing to obtain relief for the unnamed class members. *See, e.g., Blum v. Yaretsky,* 457 U.S. 991, 999–1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). The

1

2

3

> "class certification approach," on the other hand, "holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." NEWBERG ON CLASS ACTIONS § 2:6.

4

Id. at 1261–62.

5

The Ninth Circuit adopted the class certification approach, as it "has been embraced

6

several times (though not always) by the Supreme Court, and is the one adopted by 'most' other

7

federal courts to have addressed the issue." Id. at 1262 (citations omitted).  The Ninth Circuit

8

then found that under either approach, the named plaintiffs were adequate representatives,

9

because their claims did not implicate a significantly different set of concerns than the unnamed

10

plaintiffs' claims:

11

12

13

14

15

16

17

18

19

20

> Under the class certification approach, or the standing approach for that matter, the named plaintiffs in this case, with or without the Rodriguezes, are adequate representatives because the named plaintiffs' claims do not "implicate a significantly different set of concerns" than the unnamed plaintiffs' claims. *Gratz,* 539 U.S. at 265, 123 S.Ct. 2411; *see also id.* at 263, 265, 123 S.Ct. 2411 (holding that "[r]egardless of whether the requirement is deemed one of adequacy or standing, it is clearly satisfied in this case" because "the University's use of race in undergraduate transfer admissions does not implicate a significantly different set of concerns than does its use of race in undergraduate freshman admissions"); *Falcon,* 457 U.S. at 156, 102 S.Ct. 2364 (named plaintiffs can adequately represent claims that are "fairly encompassed by the named plaintiff's claims" (internal quotation marks omitted)). In determining what constitutes the same type of relief or the same kind of injury, "we must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Armstrong v. Davis,* 275 F.3d 849, 867 (9th Cir.2001).

21

22

23

24

25

26

27

28

> In this case, MCSO's practices during saturation patrols, determined by the district court to be unconstitutional, do not raise "a significantly different set of concerns" from the same practices instituted during regular patrols. *Gratz,* 539 U.S. at 265, 123 S.Ct. 2411. Although Defendants may be right that "the purpose and procedures for saturation patrols departed from MCSO's normal traffic enforcement policies," the operative "set of concerns" is the constitutional violations flowing from MCSO's policies that the district court found to apply across the board to all traffic stops, not just to those conducted during saturation patrols. That is, whether the stop takes place as part of a saturation patrol or a routine traffic patrol, the constitutional concerns are the same because MCSO's policies, the district court found, have been applied to both situations. *See Falcon,* 457 U.S. at 159 n. 15, 102 S.Ct. 2364 ("If [a

48

1
2
3

    defendant-employer] used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the ... requirements of [Federal] Rule [of Civil Procedure] 23(a)").

4

Id. at 1263.

5
6
7
8
9
10
11
12
13
14
15
16

    Based on the parties' arguments concerning Melendres and the Court's review of the caselaw and the facts here, the Court finds Melendres counsels in favor of Plaintiff's position. Whether Plaintiff "may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." Id. at 1262 (quoting 7AA CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1785.1 (3d ed.)). Class certification is "meant to ensure that named plaintiffs are adequate representatives of the unnamed class." Id. at 1261. Under the class certification approach "a court must first determine whether 'at least one named class representative has Article III standing,' then 'question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.' " Melendres v. Arpaio, 784 F.3d at 1262 (quoting Prado–Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279–80 (11th Cir. 2000)).

17
18
19
20
21
22
23
24
25
26
27
28

    Here, the Court finds that the named Plaintiff here, whose individual claims pertain to a policy issued before 2013, do not "implicate a significantly different set of concerns" than the unnamed plaintiffs' claims." Melendres, 784 F.3d at 1263 (quoting Gratz v. Bollinger, 539 U.S. 244, 265 (2003)). As noted in Melendres, "[a]lthough Defendants may be right that 'the purpose and procedures for saturation patrols departed from MCSO's normal traffic enforcement policies,' the operative 'set of concerns' is the constitutional violations flowing from MCSO's policies that the district court found to apply across the board to all traffic stops, not just to those conducted during saturation patrols . . . whether the stop takes place as part of a saturation patrol or a routine traffic patrol, the constitutional concerns are the same because MCSO's policies, the district court found, have been applied to both situations." 784 F.3d at 1263. The Court can find a reasonable connection between this language in Melendres, and that in McHugh, that Defendant left unaddressed. See McHugh, 12 Cal. 5th at 220 ('We conclude that sections 10113.71 and

49

10113.72 apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued.").  The Court finds the same operative set of concerns, the alleged violations of the Statutes, for pre-2013 and post-2013 policy holders.

Relatedly and significantly, the Court finds no significant difference in the potential remedy for pre-2013 and post-2013 policies.  See Melendres, 784 F.3d at 1264 ("However, in *Lewis* the concerns of the named plaintiffs differed so significantly from the concerns of the unnamed plaintiffs that a remedy redressing the named plaintiffs' injury could not redress that of the unnamed plaintiffs, even though, in general terms, the stated injury (denial of access to the courts) was the same [as] [f]or example, if the district court were to order accommodations for illiteracy to resolve the injury of the named plaintiffs, it would do nothing to redress the concerns of those unnamed plaintiffs who were literate but could not speak English or were in lockdown [and thus] even where named and unnamed plaintiffs state the same general constitutional injury, if the remedy sought by the named plaintiffs would not redress the injury of the unnamed plaintiffs, the claims raise a 'significantly different set of concerns' that consequently makes the named plaintiffs inadequate representatives of the unnamed plaintiffs' claims.") (citations omitted).  For these reasons, the Court finds Melendres supports Plaintiff's positions as to Issue No. 2.

Defendant cites to Wilson.  The discovery sought in Wilson that was granted, and that which was denied, demonstrates to the Court that the requests here for post-2013 policies are not out of reasonable bounds, but are rather reasonably co-extensive with those of the absent class members:

> Plaintiff contends that the curling iron failed at the point where the power cord met the stress relief. (*Id.* at ¶ 16.) Plaintiff also alleges that several other complaints were received by Defendant from other consumers that alleged similar incidents. (*Id.* at ¶ 21.) Plaintiff contends that consumers have also reported that their styling irons will improperly regulate their temperature, overheat, melt, or more commonly cease operation. (*Id.* at ¶ 22.)

> Plaintiff runs into problems for the discovery she seeks in regards to typicality. Plaintiff seeks discovery on any malfunctions on the forty-five styling irons that contain a similar power cord. However, typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" This

does not require the claims to be substantially identical, but that the representatives claims be "reasonably co-extensive with those of the absent class members." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998) . . .

. . . Plaintiff alleges that she purchased a styling iron that failed to turn on after a month and the replacement styling iron failed where the power cord met the stress relief. Plaintiff alleges that other consumers have experienced the same failure of the power cord. The parties have identified forty-five styling irons that have the same power cord and stress relief as the model that injured Plaintiff. Plaintiff's allegations are sufficient to establish typicality only for those claims where an individual experienced a similar failure of the power cord. Plaintiff has not made a prima facie case for any malfunction of styling irons manufactured by Defendant.

The Court finds that Plaintiff has sufficiently pled a prima facie case to be allowed discovery to determine if other individuals have experienced similar failure in those forty-five models with the similar power cord and stress relief. Therefore, Defendants shall be ordered to supplement their responses to Request for Production No. 18 for all forty-five models where the complaint is a failure of the power cord. If ambiguity exists as to the reasons for the complaint, Defendant shall err on the side of caution and produce such documents.

However, Plaintiff's request to require Defendant to produce additional discovery on the forty-five models is denied at this time.

Wilson, 2015 WL 1994270, at *6–7. The Court thus finds it distinguishable and does not counter the weight of authority in favor of Plaintiff's position. In light of the guidance from Melendes, the Court finds Wilson instructive, but only in that it highlights a case where the class representative's claim is very much far removed from the discovery sought by attempting to expand the class out to *any* malfunction concerning 45 different styling irons that had the same power cord that caused the malfunction. By way of analogy, the discovery sought here for two groups of pre-2013 and post-2013 policies, pertains to the same type of "malfunction," that is the violation of the Statutes. See McHugh, 12 Cal. 5th at 220. Thus, Wilson does not convince the Court that a group of policy holders from the same insurance company, subject to the same applicable law, cannot be represented by the same class representative, at least for purposes of this pre-certification discovery.

Defendant cites to Soto. Therein, the court rejected discovery as to certain claims because the named representatives essentially conceded that there was no violation of such law as to those

51

particular named representatives:

> Because Plaintiff has stated a prima facie case for class certification, and presented evidence in support thereof, further discovery should be permitted on this claim . . .

> On the other hand, Plaintiff is not entitled to discovery for the claims he is unable to pursue on behalf of a class . . . Plaintiff admits Castlerock provided breaks, but he chose to keep working to meet a quota. In addition, although Plaintiff seeks documents to establish unpaid breaks "by demonstrating the wide spread existence of piece rate shifts," he and Ms. Galvan were paid on an hourly basis, with "bonus" of "a few cents per hour." (Soto Depo. at 109:11–23, Decl. of Hanlon, Doc. 49 at 9). Accordingly, Plaintiff is not entitled to discovery related to Castlerock's meal and rest break policies because he lacks standing to pursue these claims.

Soto, 282 F.R.D. at 503. The Court also finds the issues here distinguishable given both pre-2013 and post-2013 policy holders maintain claims of violation of the Statutes. See McHugh, 12 Cal. 5th at 220; Melendres, 784 F.3d at 1261-63.

For these reasons, and the same as discussed above as to Issue No. 1, the Court finds Melendres supports the Court's declining of adopting the holding in Small. See McHugh, 12 Cal. 5th at 220; Melendres, 784 F.3d at 1261-63.

The parties take different positions as to Rahmatullah v. Charter Commc'ns, LLC, No. EDCV20354PSGSPX, 2021 WL 1593242, at *4 (C.D. Cal. Mar. 25, 2021), with Plaintiff stating it cited to Melendres and allowed discovery into other former employees with similar but not identical unpaid wage claims, whereas Defendant counters Plaintiff "curiously relies" on the case, stating it held a named plaintiff was not entitled to discovery as courts will not allow a fishing expedition where it is apparent the named plaintiff cannot maintain the action on behalf of the class. Thus, it appears Defendant focuses on this aspect of Rahmatullah:

> Plaintiff's reliance on defendant's reimbursement policy is unpersuasive. The policy states it only applies to employees who are required to travel or entertain to support company business. Stecker Decl. ¶ 6, Ex. 2 at 1-2. Most importantly, plaintiff does not argue that the policy is facially unlawful, which undermines his argument that the court should rely on it to allow wide-ranging discovery into defendant's entire California workforce. See JS at 13. Aside from the policy, plaintiff offers no additional evidence or argument, other than speculation, that his discovery requests will likely produce persuasive evidence of company-wide wrongdoing.

1   Rahmatullah, 2021 WL 1593242, at *4.  However, the Court did then rule like Plaintiff proffers

2   as to a second issue, with a more pointed discussion of Melendres:

3               There is disagreement on whether a plaintiff claiming a personal
                violation of only one of the two California waiting time statutes
4               (Labor Code §§ 201, 202) has standing to represent a class claiming
                violations of both statutes. In McGhee v. Tesoro Refining &
5               Marketing Co., the court held that because §§ 201 and 202 provide
                for separate causes of action, a plaintiff must have suffered both
6               types of injuries to represent a class claiming violations of both
                statutes. 440 F. Supp. 3d 1062, 1072 (N.D. Cal. 2020) ("A named
7               plaintiff may pursue a claim on behalf of a class only for statutory
                injuries that he himself suffered." (citation omitted)) . . .
8
                . . . The majority approach adopted by the Ninth Circuit is to
9               analyze such situations under the Rule 23 class certification
                approach. See Melendres v. Arpaio, 784 F.3d 1254, 1262 (9th Cir.
10              2015) . . .

11              The key question of the class certification approach is whether
                plaintiff's interests are sufficiently similar to those of the unnamed
12              members. Id. at 3 (citing Melendres, 784 F.3d at 1262). In other
                words, the court must evaluate whether plaintiff's claims "
13              'implicate a significantly different set of concerns" than the
                unnamed plaintiffs' claims." Melendres, 784 F.3d at 1263
14              (quoting Gratz, 539 U.S. at 265). In Hall, the court ultimately
                concluded that the reason for an employee's separation from the
15              employer is irrelevant for purposes of §§ 201 and 202 because "the
                harmful conduct is the employer's failure to pay unearned wages
16              timely." 2019 WL 7940668, at *3. Thus, "Plaintiff's interests
                overlap with unnamed members' interests in timely receiving
17              unpaid wages after separation with Defendant." Id. The same
                conclusion was reached in at least one other case in this
18              district. See Alikhan v. Goodrich Corp., 2018 WL 6333673, at *3
                (C.D. Cal. June 11, 2018) (allowing discharged plaintiff to
19              represent class claiming both §§ 201 and 202 violations).

20              The court finds no reason to deviate from the majority approach
                here. Accordingly, the court will allow discovery into whether
21              defendant's former California employees were timely paid their
                final wages as required under California's waiting time statutes,
22              regardless of the reason for separation.

23   Rahmatullah, 2021 WL 1593242, at *5-6 (citing McGhee v. Tesoro Ref. & Mktg. Co. LLC, 440

24   F. Supp. 3d 1062, 1072 (N.D. Cal. 2020); Hall v. W. Ref. Retail, LLC, No.

25   519CV00855VAPSKX, 2019 WL 7940668, at *3 (C.D. Cal. Sept. 19, 2019).

26          In McGhee, the court held the plaintiff could not pursue a claim on behalf of a class

27   pertaining to violations of apparently mutually exclusive statutes, but could "only pursue a claim

28   under Section 201 or Section 201, but not both."  McGhee, 440 F. Supp. 3d at 1072 ("A named

1   plaintiff may pursue a claim on behalf of a class only for statutory injuries that he himself

2   suffered . . . McGhee therefore cannot pursue a claim for both types of injuries unless he suffered

3   both types of injuries (i.e., he was both terminated and resigned), which he does not claim to have

4   done.").

5         The <u>Hall</u> decision adopted and described as the majority approach in <u>Rahmatullah</u>,

6   focused on the similar harmful conduct of failing to pay unearned wages:

> The Court finds that Plaintiff's § 201 claim is sufficiently aligned
> with absent members asserting a § 202 claim. Under § 201, an
> employer must pay an employee it discharged all wages earned and
> unpaid within seventy-two hours of discharge. Cal. Labor Code §
> 201(a). If an employee quits (as opposed to being involuntarily
> discharged), the employer also owes that employee all unearned
> wages within seventy-two hours of the employee's departure. *Id.* §
> 202(a). Regardless of the nature of the separation, the employer is
> liable under § 203 if it does not pay the employee all unearned
> wages within the seventy-two hour period after separation from
> employment. *See id.* § 203. Thus, §§ 201 and 202 are claims for
> employees who were not timely paid all their wages by an employer
> upon separation from employment. The reason for the employee's
> separation from the employer is irrelevant for the purposes of §§
> 201 and 202 and the harmful conduct is the employer's failure to
> pay unearned wages timely. Therefore, Plaintiff's interests overlap
> with unnamed members' interests in timely receiving unpaid wages
> after separation with Defendant.

17   <u>Hall</u>, 2019 WL 7940668, at *3.

18         The Court finds the second discussion in <u>Rahmatullah</u> more applicable to the facts here,

19   and supports Plaintiff's position. <u>Rahmatullah</u>, 2021 WL 1593242, at *6 ("[T]he court will allow

20   discovery into whether defendant's former California employees were timely paid their final

21   wages as required under California's waiting time statutes, regardless of the reason for

22   separation."). The Court reaches this conclusion based on <u>McHugh</u> and its holding that the

23   Statutes apply to both pre-2013 and post-2013 policies, which the Court finds distinguishes the

24   situation from the reasoning utilized by the <u>McGhee</u> court, where the court founds the statutes to

25   be mutually exclusive for one plaintiff to utilize, whereas here, the same statutes are violated.

26         Thus, there appears even stronger reasons to side with Plaintiff here in light of <u>McHugh</u>,

27   compared to the Central District cases that allowed discovery it despite <u>McGhee</u> and the differing

28   unpaid wage statutes.

1    Accordingly, for all of the above reasons, the Court finds in favor of Plaintiff as to Issue

2    No. 2, and overrules Defendant's objections.[8]

3         **D.      The Court Declines to Impose any Monetary Sanctions or Award Fees**

4         If a motion to compel discovery is granted, the Court must order the "party or deponent

5    whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay

6    the movant's reasonable expenses incurred in making the motion, including attorney's fees"

7    unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or

8    discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was

9    substantially justified; or (iii) other circumstances make an award of expenses unjust."  Fed. R.

10   Civ. P. 37(a)(5)(A).  If the motion is denied, the court must "require the movant, the attorney

11   filing the motion, or both to pay the party or deponent who opposed the motion its reasonable

12   expenses incurred in opposing the motion, including attorney's fees," however the court "must

13   not order this payment if the motion was substantially justified or other circumstances make an

14   award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(B).  Where the motion is granted in part and

15   denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable

16   expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).

17        The parties' joint statement does not mention sanctions or attorneys' fees.  Given the

18   differing caselaw supportive of both sides (though less supportive for Defendant as discussed

19   throughout the opinion), the type of discovery sought in relation to legitimate privacy concerns

20   regarding the absent class members, and legitimate issues presented concerning the scope of the

21   meet and confer, the Court finds the opposing party's nondisclosure, response, or objection was

22   substantially justified; or other circumstances make an award of expenses unjust.  Fed. R. Civ. P.

23   37(a)(5)(A).  Accordingly, the Court declines to order Defendant to pay attorneys' fees related to

24   this motion.

25   / / /

26   / / /

27   ─────────────────────
[8]  The Court additionally incorporates reasoning pertaining to relevancy, class action discovery generally, the Rule
28   26(b) factors, and the discussion of privacy concerns and the protective order in place in this action as discussed in
regard to Issue No. 1, into the Court's reasoning and decision more generally as applicable to Issue No. 2.

**V.**

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion to compel (ECF No. 46) is GRANTED;

2.      Defendant shall serve further responses to Interrogatory Nos. 17, 19, 20, and 21, within twenty-one days of this order;

3.      Defendant shall serve a supplemental response and production to Request for Production No. 34 within twenty-one days of this order;[9] and

4.      The Court declines to award any attorneys' fees.

IT IS SO ORDERED.

Dated:    **November 2, 2022**

UNITED STATES MAGISTRATE JUDGE

---

[9] The Court is inclined to grant a stipulated extension of the deadline to file a motion for class certification in light of this order.  Further, Defendant argued certain information pertaining to "Death Potential Match," and "Potential Date of Death," has already been produced. (JS 14.)  Plaintiff did not specifically address this point.  To the extent such information has been produced and the production would be in compliance with this order granting Plaintiff's motion to compel, Defendant shall not be required to produce such information.