# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN L. HOLLAND-HEWITT, | Case No.  1:20-cv-00652-KES-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |
| v. | |
| ALLSTATE LIFE INSURANCE COMPANY, | (ECF Nos. 60, 73, 77, 85, 86, 89, 90, 91, 107, 110) |
| Defendant. | **OBJECTIONS DUE WITHIN 21 DAYS** |

## I.

## INTRODUCTION

Plaintiff Susan L. Holland-Hewitt, in her representative capacity as agent and attorney in fact for her father, James L. Holland, brings this action on behalf of herself, and others similarly situated, against Defendant Allstate Life Insurance Company. (Compl. ¶ 7, ECF No. 1.) Currently, before the Court is Plaintiff's motion for certification of the class brought pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2)(3) and 23(c)(4).  (ECF No. 60.)  The matter was referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Now that a new District Judge has been assigned to the instant action, the Court hereby issues its findings and recommendations.

Having considered the moving papers, the declarations and exhibits attached thereto, and

the arguments presented at the hearings,[1] as well as the Court's file, the Court issues the following findings and recommendations recommending denying Plaintiff's motion for class certification.

## II.

## RELEVANT BACKGROUND

Around 1997, Mr. Holland converted two life insurances policies from Allstate Insurance into a single policy that is at issue in this action. (Compl. ¶ 27, Memo. of Points and Auth. In Support of Plaintiff's Mot. for Class Certification ("Mot.") 12.[2]) The policy was purchased, issued, and delivered in California. (Compl. ¶ 28, Mot. 12.) The policy is for $50,000. or more and Plaintiff is the beneficiary. (Compl. ¶ 29, Mot. 12.) The premium payment was $130. per month and provided for a 60-day grace period and that the insurer would provide "at least 31 days prior to the date coverage stops." (Id.)

After consistently making payments, around September of 2016, a premium payment was missed. (Compl. ¶ 31, Mot. 13.) Around this time, Mr. Holland's wife was very ill and suffering from the effects of a stroke and seizure, and Mr. Holland had Alzheimer's. (Id., Mot. 9, ECF No. 60-1.) Defendant terminated the policy around November 2016 for nonpayment of premium. (Mot. 9.) In 2017, Defendant denied Plaintiff's request to reinstate the policy. (Compl. ¶ 32.)

On May 8, 2020, Susan L. Holland-Hewitt ("Holland-Hewitt" or "Plaintiff") filed this putative class action against Allstate Life Insurance Company ("Allstate" or "Defendant"). (ECF No. 1.) Plaintiff alleges Defendant wrongfully lapsed or terminated life insurance policies, including hers, without first providing all the consumer protections mandated by California Insurance Code Sections 10113.71 and 10113.72 (the "Statutes"), namely: minimum grace periods, proper notices of lapse, and the right to designate others to receive important duplicative notices and information regarding the insurance policy. (Joint Statement Re Mot. Compel ("JS") 3, ECF No. 52; Compl. ¶ 1.) Plaintiff alleges the termination of her policy, and many others,

---

[1] The Court has considered all arguments raised by the parties in briefing and oral argument. Only those arguments that the Cort finds to be necessary to decision on the motion shall be addressed herein.

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

was and is invalid.  Plaintiff brings claims for Declaratory Judgment or Relief under California Civil Code, sections 1060, et seq., and the Federal Declaratory Judgment Act, under Title 28 of the United States Code, sections 2201, et seq., Breach of Contract under California Law, Unfair Competition under the California Business & Professions Code, sections 17200, et seq., and Financial Elder Abuse under California Welfare and Institutions Code, section 15610.30 on behalf of herself and a putative class.  (Compl. ¶ 41.)

On June 23, 2021, this action was stayed upon the granting in part of Defendant's motion to dismiss or stay the action until the California Supreme Court issued a decision in McHugh v. Protective Life Insurance (No. S259215) and pending the issuance of a decision by the Ninth Circuit in either Bentley v. United of Omaha Life Insurance Company (Nos. 20-55435 and 20-55466) or Thomas v. State Farm Life Insurance Company (No. 20-55231).  (Order Granting in Part Defendant's Motion to Dismiss or Stay this Action and Staying This Action, 10, ECF No. 30.)  On October 12, 2021, the stay of this matter was lifted upon the issuance of the decisions in McHugh, Bentley, and Thomas.[3]  (ECF No. 34.)

On January 10, 2022, the Court issued a class action scheduling order setting a deadline of September 30, 2022, for pre-certification discovery, and a deadline of October 28, 2022, to file a motion for class certification.  (ECF No. 40.)  On October 21, 2022, the Court granted a stipulation to extend the discovery and motion for the class certification deadline.  (ECF Nos. 55, 56.)  On November 14, 2022, Plaintiff filed a motion to certify the class ("the motion") and a notice of request to seal documents.  (ECF Nos. 60, 61.)  On November 28, 2022, and January 5, 2023, orders issued granting the parties stipulations to extend the briefing schedule on the motion.  (ECF Nos. 64, 65, 70, 71.)

Defendant filed an opposition to the motion on January 27, 2023.  (ECF No. 73.)  On February 17, 2023, Plaintiff filed a reply, a notice of filing documents, and a request to seal.  (ECF No. 77, 78, 79, 80.)

A hearing on Plaintiff's motion was held on March 22, 2023.  (ECF No. 81.)  Counsel

---

[3] In McHugh, the California Supreme Court held that the Statutes' "grace period and notice protections apply to all policies in effect as of the sections' effective date."  McHugh v. Protective Life Ins. Co., 12 Cal.5th 213, 226 (2021).

Alex Tomasevic appeared for Plaintiff and counsel Katherine Villanueva and Jamie Campisi appeared for Defendant.  The Court ordered a supplemental briefing schedule.  On April 28, 2023, the parties filed supplemental briefs and a stipulation to withdraw Plaintiff's requests to file documents under seal.  (ECF Nos. 85, 86, 87.)  On May 9, 2023, Plaintiff filed exhibits in support of her motion and reply.  (ECF No. 89.)  On May 19, 2023, the parties filed the replies to the supplemental briefs.  (ECF Nos. 90, 91.)  On May 24, 2023, Plaintiff filed a notice of supplemental authority in support of the motion.  (ECF No. 92.)  On May 16, 2023, the second hearing on the motion was continued at the stipulation of the parties.  (ECF Nos. 93, 94.)

On June 20, 2023, Defendant filed a notice of supplemental authority in support of opposition to the motion.  (ECF No. 95.)  On July 12, 2023, Plaintiff filed supplemental authority in support of her motion.  (ECF No. 96.)  On July 24, 2023, the hearing on the motion was continued by stipulation of the parties.  (ECF Nos. 97, 98.)  On August 16 and 29, 2023, Plaintiff filed notices of supplemental authority in support of the motion.  (ECF No. 99, 100.)  On September 27, 2023, a suggestion of death and notice of intent to move forward was filed by Plaintiff.  (ECF No. 101.)

On October 2, 2023, Defendant filed an *ex parte* application to vacate the hearing on the motion and a video hearing on the application was held on October 2, 2023.  (ECF Nos. 102, 104.)  Counsel Alex Tomasevic appeared for Plaintiff and counsel Katherine Villanueva, Glenn Merten, and Susan Ly appeared for Defendant.  (ECF No. 105.)  The *ex parte* application was granted, supplemental briefing was ordered, and the hearing on the motion was continued to November 8, 2023.  (ECF No. 106.)  On October 16, 2023, Defendant filed an opposition to the motion.  (ECF No. 107.)  Plaintiff filed a response on October 30, 2023.  (ECF No. 110.)

On November 8, 2023, a continued hearing on the motion was held.  (ECF No. 111.)  Counsel Alex Tomasevic appeared for Plaintiff and counsel Katherine Villanueva and Jamie Campisi appeared for Defendant.  (ECF No. 111.)

On March 19, 2024, Defendant filed a notice of supplemental authority.  (ECF No. 115.)

## III.

## LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (quoting Califano v. Yamasaki, 442 U.S. 682, 700–701 (1979)).  To certify a class action, the party must affirmatively demonstrate that the requirements of Rule 23 of the Federal Rules of Civil Procedure are met. Wal-Mart Stores, Inc. v. Dukes ("Wal-Mart"), 564 U.S. 338, 350 (2011).  This requires the party seeking certification to demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met.  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013). Courts must "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23."  Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 471 (E.D. Cal. 2009).  This "rigorous analysis" will frequently "will entail some overlap with the merits of the plaintiff's underlying claim."  Wal-Mart, 564 U.S. at 351.  In fact, "a district court must consider the merits if they overlap with the Rule 23(a) requirements."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011) (citing Wal–Mart, 564 U. S. at 351; Hanon v. Dataproducts, 976 F.2d 497, 509 (9th Cir. 1992)).

Under Rule 23(a), the four requirements that must be met for class certification are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims for defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(1)-(4); Wright, 259 F.R.D. at 471.

Here, Plaintiff seeks certification under Rule 23(b)(2) and 23(b)(3), or in the alternative Rule 23(c)(4).  "The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."  Comcast Corp., 569 U.S. at 33.  Under Rule 23(b), a plaintiff must establish one of the following conditions is present: (1) that there is a risk of inconsistent adjudications from separate actions that would result in incompatible standards of conduct for

1   the party opposing the class or would be dispositive of the interests of members not parties to the

2   actions or would substantially impair their ability to protect their interests; (2) the party opposing

3   the class has acted or refused to act on grounds that apply generally to the class, so that final

4   injunctive or corresponding declaratory relief is appropriate respecting the class as a whole; or

5   (3) the court finds questions of law or fact common to class members predominate over any

6   questions affecting only individual members, and a class action is superior to other methods of

7   adjudicating the controversy.  Fed. R. Civ. P. 23(b)(1)-(3); Wright, 259 F.R.D. at 471-72.

8        In considering subsection (3), "matters pertinent to these findings include: (A) the class

9   members' interests in individually controlling the prosecution or defense of separate actions; (B)

10   the extent and nature of any litigation concerning the controversy already begun by or against

11   class members; (C) the desirability or undesirability of concentrating the litigation of the claims

12   in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ.

13   P. 23(b)(3)(A)-(D).

14                             **IV.**

15                       **ANALYSIS AND DISCUSSION**

16        The Statutes at issue here are California Insurance Code sections 10113.71 and 10113.72

17   which became effective on January 1, 2013.  Section 10113.71 mandates that each policy issued

18   or delivered in California (1) "shall contain a provision for a grace period of not less than 60

19   days from the premium due date" and "that the policy shall remain in force during the grace

20   period[;] (2) where termination is for nonpayment of premium, any "notice of pending lapse and

21   termination of a life insurance policy" is not effective unless mailed "to the named policy owner,

22   a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a

23   known assignee or other person having an interest in the individual life insurance policy," 30

24   days prior to the effective date of termination;  (3) notice must be provided "to the policy owner

25   and to the designee by first-class United States mail within 30 days after a premium is due and

26   unpaid."  Section 10112.72 provides that (1) life insurance policies shall not issue or be delivered

27   "until the applicant has been given the right to designate at least one person, in addition to the

28   applicant, to receive notice of lapse or termination of a policy for nonpayment of premium[;]" (2)

the insurer must provide the policyholder annual notice "of the right to change the written designation or designate one or more persons[;" and (3)  no individual life insurance policy can "lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated . . . within 30 days after a premium is due and unpaid[.]

In 2021, the California Supreme Court held all California life insurance policies are entitled to receive the Statutes' protections regardless of the date of issuance.  McHugh v. Protective Life Ins. Co., 12 Cal.5th 213, 220 (2021) ("McHugh").  The Court found "[t]his interpretation fits the provisions' language, legislative history, and uniform notice scheme, and it protects policy owners — including elderly, hospitalized, or incapacitated ones who may be particularly vulnerable to missing a premium payment — from losing coverage, consistent with the provisions' purpose."  McHugh, 12 Cal.5th at 220.

Plaintiff seeks to represent the following Class and Sub-Class contending that all the requirements of Rule 23 are satisfied.

**The Class:**

All owners, or beneficiaries upon a death of the insured, of Defendant's individual life insurance policies issued in California before 2013 that Defendant lapsed or terminated for the non-payment of premium in or after 2013 without first providing all the notices, grace periods, and offers of designation required by Insurance Code Sections 10113.71 and 10113.72.

**The Elder Abuse Sub-Class:**

All members of the Class defined above who were also 65 years of age or older at the time the policy lapsed or terminated.[4]

(ECF No. 60-1 at 9.)

**A.      Certification Under Rule 23(b)(2)**

The Court first addresses Plaintiff's motion for certification under Rule 23(b)(2).  To obtain certification under Rule 23(b)(2), Plaintiff must satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and Rule 23(b)(2)'s requirement that

---

[4] At this time, there is no class representative for the Elder Abuse sub-class as Plaintiff has withdrawn as the representative for the sub-class.

1   Defendant "has acted or refused to act on grounds that apply generally to the class, so that final

2   injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

3   whole." Fed. R. Civ. P. 23(b)(2). "In other words, Rule 23(b)(2) applies only when a single

4   injunction or declaratory judgment would provide relief to each member of the class." Wal-

5   Mart, 564 U.S. at 360.

6       Under the Declaratory Judgment Act, "any court of the United States, upon the filing of

7   an appropriate pleading, may declare the rights and other legal relations of any interested party

8   seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §

9   2201(a). The Act does not create new substantive rights; it merely expands the remedies

10  available in federal court. Shell Gulf of Mex. v. Ctr. For Biological Div., 771 F.3d 632, 635 (9th

11  Cir. 2014). Similarly, under California law, any person may bring an action seeking a

12  declaration of his rights or duties under a written instrument. Cal. Civ. Proc. Code § 1060.

13  "Courts in the Ninth Circuit have observed that the 'two statutes are broadly equivalent.'" Steen

14  v. Am. Nat'l Ins. Co., 609 F. Supp. 3d 1066, 1072 (C.D. Cal. 2022) (quoting In re Adobe Sys.

15  Privacy Litig., 66 F.Supp.3d 1197, 1219 (N.D. Cal. 2014)).

16      "The availability of relief under the Declaratory Judgment Act 'presupposes the existence

17  of a judicially remediable right.'" City of Reno v. Netflix, Inc., 52 F.4th 874, 878 (9th Cir.

18  2022) (quoting Schilling v. Rogers, 363 U.S. 666, 677 (1960)). The Act "does not provide an

19  affirmative cause of action where none otherwise exists." City of Reno, 52 F.4th at 878. The

20  decision to grant declaratory relief is discretionary, even where the court is presented with a

21  justiciable controversy. United States v. State of Wash. ("Washington"), 759 F.2d 1353, 1356

22  (9th Cir. 1985). "Declaratory relief should be denied when it will neither serve a useful purpose

23  in clarifying and settling the legal relations in issue nor terminate the proceedings and afford

24  relief from the uncertainty and controversy faced by the parties." Washington, 759 F.2d at 1357.

25      "[T]he use of declaratory judgments in insurance cases has been very common." 10B

26  Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2760 (4th ed.); see

27  also Siino v. Foresters Life Ins. & Annuity Co., No. 20-CV-02904-JST, 2023 WL 4410948, at *4

28  (N.D. Cal. July 7, 2023) (quoting Lewis v. CMFG Life Ins. Co., No. 2:21-cv-04010-SVW-

MRW, 2022 WL 2125129, at *3 (C.D. Cal. Jan. 12, 2022) ("[d]eclaring the legal rights and obligations of parties to an insurance contract is a staple use of declaratory judgments."); Fujimoto v. W. Pioneer Ins. Co., 86 Cal.App.3d 305, 307, 313 (1978) (reversing trial court's declaratory relief judgment that an insurance policy was in force because the insured failed to renew the policy).

Here, Plaintiff seeks declaratory relief in the form of a declaration that defendant violated the Statutes and thus wrongfully terminated the affected policies. As discussed in the November 8, 2023, hearing, Plaintiff's claim in this instance is for breach of contract. She is the beneficiary under her late father's life insurance policy, and as such, the Court finds issues with typicality and adequacy as discussed supra. Plaintiff alleges that due to the failure to provide the annual notice of the right to designate third party notice and the notice to a third party of lapse of the policy due to non-payment of premiums, her father's insurance policy is still in force, and she is entitled to damages (the benefits under the policy). Plaintiff seeks a declaration that the policy is in force and an injunction to stop and remedy the ongoing violations of the Statutes.

Plaintiff's request for declaratory relief is duplicative of her breach of contract claim. "Declaratory relief is not intended to redress past wrongs, its purpose is to resolve uncertainties or disputes that may result in future litigation." Vascular Imaging Pros., Inc. v. Digirad Corp., 401 F.Supp.3d 1005, 1010 (S.D. Cal. 2019). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue[.]" Washington, 759 F.2d at 1357. Plaintiff's breach of contract claim will resolve any outstanding issues of whether the policy is in effect and if benefits are due to Plaintiff. Courts have held that where resolution of a breach of contract claim will resolve any questions about interpretation of the contract, declaratory relief is unnecessary. Vascular Imaging Pros., Inc., 401 F.Supp.3d at 1010.

While "declaratory relief is appropriate where a breach of contract claim will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief," Vascular Imaging Pros., Inc., 401 F.Supp.3d at 1010 (quoting Streamcast Networks, Inc. v. IBIS LLC, No. CV 05-04239 MMM (Ex), 2006 WL 5720345, at *3-4 (C.D. Cal. May 2, 2006)), in this instance,

Plaintiff's breach of contract claim will settle all contractual issues that she raises in this action and declaratory relief will serve no useful purpose.[5]   The Ninth Circuit has held that "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief. Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek." Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1045 (9th Cir. 1999).   Similarly, courts hold that class wide declaratory or injunctive relief is not available unless the named plaintiff is entitled to seek such relief.  Ok Hee Park v. AXA Equitable Life Ins. Co., No. 8:22-CV-00761SPGDFM, 2023 WL 1931373, at *8 (C.D. Cal. Jan. 11, 2023) (injunctive relief)[6]; Pitt v. Metro. Tower Life Ins. Co., No. 20-CV-694-RSH-DEB, 2022 WL 17972167, at *9 (S.D. Cal. Dec. 1, 2022) (declaratory and injunctive relief); Nieves v. United of Omaha Life Ins. Co., No. 21-CV-01415-H-KSC, 2023 WL 2705836, at *6 (S.D. Cal. Mar. 28, 2023) (injunctive relief).

Plaintiff is not entitled to declaratory or injunctive relief in this action.  Accordingly, the Court recommends that certification under Rule 23(b)(2), should be denied.

---

[5] See also Pitt v. Metro. Tower Life Ins. Co., No. 20-CV-694-RSH-DEB, 2023 WL 3879587, at *9 (S.D. Cal. June 5, 2023) (granting summary judgment in favor of defendant on declaratory relief claim in breach of contract action); Steen v. Am. Nat'l Ins. Co., 2023 WL 4004192, at *11 (C.D. Cal. June 14, 2023) (finding declaratory relief not appropriate for putative class members that have a fully accrued breach of contract claim); Small v. Allianz Life Ins. Co. of N. Am., No. CV20-01944TJHKESX, 2023 WL 4042593, at *4 (C.D. Cal. May 23, 2023) (finding subclass with deceased insureds is not entitled to declaratory relief because monetary damages are an adequate remedy); Nieves v. United of Omaha Life Ins. Co., No. 21-CV-01415-H-KSC, 2023 WL 2705836, at *6 (S.D. Cal. Mar. 28, 2023) (denying certification under Rule 23(b)(2) in part because named plaintiff could not demonstrate irreparable harm where no allegation breach of contract damages constitute an inadequate remedy, and declaratory relief claim is moot); Moriarty v. Am. Gen. Life Ins. Co., No. 3:17-CV-1709-JO-WVG, 2023 WL 5211632, at *5 (S.D. Cal. Aug. 14, 2023), motion to certify appeal granted, No. 3:17-CV-1709-JO-WVG, 2023 WL 6280967 (S.D. Cal. Sept. 26, 2023) (granting summary judgment on breach of contract claim and finding declaratory relief would be redundant and serve no useful purpose); Ok Hee Park v. AXA Equitable Life Ins. Co., No. 8:22-CV-00761SPGDFM, 2023 WL 1931373, at *5 (C.D. Cal. Jan. 11, 2023) (declaratory relief unavailable to plaintiff who received payment of money owed under insurance policy); cf. Farley v. Lincoln Benefit Life Co., No. 2:20-CV-02485-KJM-DB, 2023 WL 3007413, at *7, 9 (E.D. Cal. Apr. 18, 2023), reconsideration denied, No. 2:20-CV-02485-KJM-DB, 2023 WL 5488426 (E.D. Cal. Aug. 24, 2023) (court certified class under Rule 23(b)(2) where representative was typical of ninety eight percent of the class); Siino v. Foresters Life Ins. & Annuity Co., No. 20-CV-02904-JST, 2023 WL 4410948, at *3 (N.D. Cal. July 7, 2023) (finding declaratory relief appropriate where it addresses the parties future conduct under the contract).

[6] "A plaintiff seeking to obtain injunctive relief must establish that he or she is realistically threatened by a repetition of the violation to establish that the relief sought would redress the alleged injuries.  Ok Hee Park, 2023 WL 1931373, at *8 (citing Gest v. Bradbury, 443 F.3d 1177, 1181 (9th Cir. 2006)).

1        **B.      Certification Under Rule 23(b)(3)**

2        The Court next considers whether this action should be certified under Rule 23(b)(3).

3   Under Rule 23(b)(3), a "class action may be maintained if Rule 23(a) is satisfied and if the court

4   finds that the questions of law or fact common to class members predominate over any questions

5   affecting only individual members, and that a class action is superior to other available methods

6   for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  "Matters

7   pertinent to these [23(b)(3)] findings include: (A) the class members' interests in individually

8   controlling the prosecution or defense of separate actions; (B) the extent and nature of any

9   litigation concerning the controversy already begun by or against class members; (C) the

10  desirability or undesirability of concentrating the litigation of the claims in the particular forum;

11  and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).  This

12  is not an exhaustive list and other factors may be considered.  Wolin v. Jaguar Land Rover North

13  Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).  "Where recovery on an individual basis would

14  be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class

15  certification."  Wolin, 617 Fl3d at 1175.

16       1.      The Rule 23 (a) factors do not favor certification of the class

17       Plaintiff contends that this matter is ideal for class certification because it comes down to

18  a question of whether Defendant complied with the Statutes in terminating life insurance

19  policies.  Plaintiff proffers it is undisputed that Defendant lapsed numerous pre-2013 policies

20  without complying with the Statutes, and that Defendant's two principal arguments in defense

21  present common, if not universal, legal questions rendering class treatment ideal.  (Mot. 13.)

22  Plaintiff opines that she will prevail on summary judgment seeking a declaration that

23  Defendant's admitted non-compliance with the statutes rendered the terminations ineffective per

24  the plain language of the statutes.

25       Defendant responds that Plaintiff overlooks multiple individual factualized issues that

26  pertain to liability and damages.  (Def. Allstate Life Ins. Co.'s Opp. To Pl.'s Mot. for Class

27  Certification ("Opp.") 7, ECF No. 73.)  Defendant contends that the proposed class includes

28  policyholders who chose to terminate their policies, relinquished their policies because they were

at the end of their level term period, and those who obtained new and perhaps better policies through another insurer. (Id.) Further, Defendant argues that 60-day notices were provided in this case as required by the Statute and therefore the class includes policies that lapsed after receiving notice consistent with the statutory requirements. (Id.) Defendant contends that Plaintiff's theory of strict liability is novel and unsupported. (Id.) Defendant asserts that this is not a case of statutory interpretation, but "comes down to myriad, individualized, factual inquiries regarding many thousands of putative class members that render class certification inappropriate." (Id.)

Plaintiff replies that the defense that Defendant proffers does not apply to the class policies at issue in this action. (Pl.'s Reply in Supp. of Mot. for Class Certification ("Reply") 2, ECF No. 77.) Plaintiff asserts that Defendant has admitted to lapsing over 17,520 policies without complying with section 10113.72 and that she is a member of this group. (Id. 3.) Further, Plaintiff contends that Defendant has admitted not complying with section 10113.71 for term and whole life policies written before January 1, 2013, and therefore at least 10,474 class policies never received their 60-day grace period prior to the policy lapsing. (Id.) Plaintiff states that Defendant has only attacked the Rule 23(a) requirements of typicality and adequacy. (Id. at 7.) Plaintiff contends that typicality and adequacy are satisfied. (Id. 8.)

The party seeking class certification must satisfy the requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy. The Court first considers if these requirements are met.

### a.   Numerosity

Numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no absolute number or cut-off for determining numerosity, and the specific facts of each case may be examined. Schwarm v. Craighead, 233 F.R.D. 655, 660 (E.D. Cal. 2006); Cervantez v. Celestica Corp., 253 F.R.D. 562, 569 (C.D. Cal. 2008). "While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not." Farley v. Lincoln Benefit Life Co., 2023 WL 3007413, at *3 (E.D. Cal. Apr. 18,

2023), reconsideration denied, 2023 WL 5488426 (E.D. Cal. Aug. 24, 2023) (quoting <u>Ries v. Ariz. Beverages USA LLC</u>, 287 F.R.D. 523, 526 (N.D. Cal. 2012)).

Defendant has stipulated the factor of numerosity has been met.  (Def. Allstate Life Ins. Co. Resp. and Obj. to Pl. Interrogatories, Set One, Response No. 12, ECF No. 60-2 at 51.)  The evidence demonstrates that 17,735 policies were identified that would fit within the class definition.  (Guntli Decl. ¶ 16, ECF No. 73-1.)  The Court finds the proposed class of 17,735 members satisfies the numerosity requirement.

### b.    <u>Commonality</u>

Commonality is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).   The Ninth Circuit has stated that Rule 23(a)(2) is construed permissively and that "[a]ll questions of fact and law need not be common to satisfy the rule." <u>Staton v. Boeing Co.</u>, 313 F.3d 447, 462 (9th Cir. 2002) (quoting <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998)).  Indeed, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  <u>Hanlon</u>, 150 Fl3d at 1019.  "[T]he key inquiry is not whether the plaintiffs have raised common questions," but "whether class treatment will 'generate common answers apt to drive the resolution of the litigation.' "  <u>Arredondo v. Delano Farms Co.</u>, 301 F.R.D. 493, 503 (E.D. Cal. Feb. 21, 2014) (citations omitted).  Commonality is not required for all of the claims.  It may be sufficient if there is one single issue common to the proposed class. <u>Wal-Mart</u>, 564 U.S. at 359; <u>True v. American Honda Motor Co.</u>, 749 F.Supp.2d 1052, 1064 (C.D. Cal. 2010); <u>Haley v. Medtronic, Inc.</u>, 169 F.R.D. 643, 648 (C.D. Cal. 1996); <u>see also</u> <u>In re Paxil Litig.</u>, 212 F.R.D. 539, 549 (C.D. Cal. 2003) (noting that "the commonality requirement is interpreted to require very little").

As the Supreme Court has stated, a common question exists, uniting the class's claims for purposes of commonality, where a practice by the defendant "touch[es] and concern[s] all members of the class."  <u>Wal-Mart</u>, 564 U.S. at 359, fn. 10  This does not require all questions of fact and law to be common.  Instead, "shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies" suffice.  <u>Hanlon</u>, 150 F.3d

at 1019. The standard is not a particularly stringent one, even a "single common question" will do. Nitsch v. DreamWorks Animation SKG Inc., 315 F.R.D. 270, 283 (N.D. Cal. 2016).

Plaintiff initially argues that one common question, which is the most important threshold question, is "do The Statutes apply to Allstate's pre-2013 policies, like the Holland Policy?" However, this question has already been answered by the California Supreme Court in McHugh. It has been established that the Statutes apply to all policies that were in effect on January 1, 2013. McHugh, 12 Cal.5th at 226.

Plaintiff next argues that each class member's claim is based on the same conduct by Defendant lapsing or terminating a pre-2013 policy without providing the protections enumerated in the Statutes. She further states that "the breach of contract and unfair competition claims will necessarily be established because: (a) all applicable Insurance Code provisions are incorporated, as a matter of law, into each written insurance contract; and (b) violations of statutes necessarily create claims for violations of the UCL's 'unlawful' prong.  (Mot. 17.) Plaintiff states that her Elder Abuse claim is also derivative and should be certified for the same reasons.  (Id. fn. 11.)  Plaintiff argues that whether Defendant failed to provide protections that they were required starting in 2013 " 'touch[es] and concern[s]' each member of the class, easily establishing the lenient 'commonality' prong."  (Mot. 18 (citing Wal-Mart, 564 U.S. at 359, fn. 10).)

Defendant's opposition does not directly challenge commonality.

In her reply, Plaintiff states that Defendant has had to pivot because they can no longer argue that the Statutes do not apply, so they argue the Statutes do not mean what they say. (Reply 2.)  Plaintiff contends that all of Defendant's arguments are not relevant to these Statutes or claims.  (Id.)  Plaintiff asserts that there is a binary legal question that guides this action: "whether Defendant effectively terminated the class policies – or whether they were guaranteed to remain in force per the terms of The Statutes."  (Id. 2.)  Plaintiff states that the policies remain in force despite the nonpayment of premiums regardless of the reason and the insurance company's remedy is a simple one that can be satisfied by sending the required statutory notice. (Id.)  Plaintiff also points out that Defendant has not challenged commonality in their opposition.

1   (Id. 3.)

2   Defendant does argue that there are a variety of individualized questions raised by

3   Plaintiff's claims that destroy predominance.  The Court considers these arguments as they could

4   apply to the commonality analysis.   Defendant contends the following issues require

5   individualized inquiries: the different types of insurance policies covered by the proposed class,

6   injury and causation, statute of limitations and laches, affirmative defenses, mitigation of

7   damages and waiver of contractual breaches.  (Opp. 13-19.)  However, Plaintiff is seeking to

8   certify a class for declaratory and injunctive relief based on the violation of the Statutes at issue.

> Sections 10113.71 and 10113.72 "create a single, unified pretermination notice
> scheme."  This scheme requires that "[n]ew and existing policy owners [ ] have
> the opportunity to designate additional people to receive a notice of termination,"
> that "policy owners and any designees [ ] receive notice within 30 days of a
> missed premium payment," and that "insurers send notice to these parties at least
> 30 days prior" to "termination for nonpayment."  An insurer's failure to comply
> with these statutory requirements means that the policy cannot lapse.

Thomas v. State Farm Life Ins. Co., No. 20-55231, 2021 WL 4596286, at *1 (9th Cir. Oct. 6,

2021) (unpublished) (quoting McHugh, 12 Cal.5th at 240, 246).[7]

Plaintiff provides evidence that it was not until December 2021, that Defendant fully

applied the Statutes to any pre-2013 policies.  (Mot. 13; Brian Guntli Depo. Transcript 49:12-19,

51:11-17, ECF 60-2.) Plaintiff is alleging that the common question is Defendant's failure to

comply with the statutory requirements and whether the insurance policies of the putative class

members remain in force.  See Farley, 2023 WL 3007413, at *4 ("the deprivation of procedural

safeguards guaranteed by the statutes" is the same injury alleged for all putative class members).

Here, the answer to the question of whether the insurance policies of the putative class were

effectively terminated or remain in force due to the statutory violations will resolve a common

question that will "generate common answers apt to drive the resolution of the litigation."

Arredondo, 301 F.R.D. at 503.  The Court finds that Plaintiff has demonstrated that commonality

exists under Rule 23(a).

---

[7] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1     **c.**    <u>**Typicality**</u>

2     Rule 23 also requires that "the claims or defenses of the representative parties are typical

3 of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Under the rule's permissive

4 standard, claims "need not be substantially identical," but are typical if the representative's

5 claims are "reasonably co-extensive with those of the absent class members." <u>Parsons v. Ryan</u>,

6 754 F.3d 657, 685 (9th Cir. 2014) (quoting <u>Hanlon</u>, 150 F.3d at 1020). Typicality is based on the

7 "nature of the claim or defense of the class representative, and not to the specific facts from

8 which it arose or the relief sought." <u>Parsons</u>, 754 F.3d at 685 (quoting <u>Hanon</u>, 976 F.2d at 508).

9     Typicality tests "whether other members have the same or similar injury, whether the

10 action is based on conduct which is not unique to the named plaintiffs, and whether other class

11 members have been injured by the same course of conduct." <u>Ellis</u>, 657 F.3d at 984 (quoting

12 <u>Hanon</u>, 976 F.2d at 508). The requirements of commonality and typicality occasionally merge,

13 and "[b]oth serve as guideposts for determining whether under the particular circumstances

14 maintenance of a class action is economical and whether the named plaintiff's claim and the

15 class claims are so interrelated that the interests of the class members will be fairly and

16 adequately protected in their absence." <u>Parsons</u>, 754 F.3d at 685 (quoting <u>Wal-Mart</u>, 564 U.S. at

17 349 n.5). The purpose of Rule 23(a)(3)'s typicality requirement is merely "…to assure that the

18 interest of the named representative aligns with the interests of the class." <u>Wolin</u>, 617 F.3d at

19 1175-1176 (quoting <u>Hanon</u>, 976 F.2d at 508.)

20     Plaintiff argues her claims are reasonably co-extensive with those of the class, as every

21 class member has the same complaint: that Defendant will not recognize their insurance policies

22 as in force even though the Statutes demand it. (Mot. 19.) Further, Plaintiff asserts that

23 Defendant should have, but did not, give them all the protections required by the Statutes,

24 including a 60-day grace provision, annual notices of a right to designate, and/or proper lapse

25 notice to both the policy owner and the designee. (<u>Id.</u>) Plaintiff contends that every class

26 member has suffered the same injury, namely payment of policy benefits or a right to continue

27 their insurance under the terms guaranteed by law; and every class member is entitled to the

28 same relief (revival of their policy) for the same reason (noncompliance with the Statutes). (<u>Id.</u>)

1    Defendant contends that there are individualized issues that preclude a finding that

2    Plaintiff's claims would be typical to the class.  Defendant argues that Plaintiff's claims are not

3    typical to the class because there are defenses unique to her claims that must be individually

4    adjudicated.  (Opp. 24.)  Further, Defendant states that Plaintiff is not typical of those individuals

5    who indicated an affirmative intent to allow their policies to lapse; nor those individuals who

6    received a grace period of less than 60-days; individuals whose policies lapsed but were

7    subsequently reinstated; policyholders whose policies lapsed despite full compliance with the

8    statutes; or individuals subject to affirmative defenses, such as waiver or failure to mitigate.  (Id.,

9    25.)

10    Plaintiff replies that the nature of her claim is identical to that of her peers: Defendant

11    prematurely terminated her policy.  (Reply 8.)  Plaintiff argues that Defendant's failure to strictly

12    comply with the Statutes at issue and the termination of her policy is undisputed.  (Id.)

13    Plaintiff's legal theory, that strict compliance with the Statutes is required which means her

14    policy is still in force and eligible for payment as a matter of law, will be argued for everyone.

15    (Id.)

16        **i.    Whether the Statutes provide for nontermination for any alleged violation**

17    The Court first considers if the violation of different subsections of the Statutes,

18    specifically the third-party designation requirement, defeats the typicality requirement.  Plaintiff

19    argues that her claims are typical of the class because all putative class members did not receive

20    all the protections provided by the Statutes. Defendant counters with the insurance contract for

21    Plaintiff which provides for a 60-day grace period and that the policy shall remain in effect

22    during that time.  (Allstate Life Ins. Policy 13, ECF No. 73-2.)  The policy also states that notice

23    shall be provided to the policyholder and any assignees at least 31-days prior to the day coverage

24    stops.  (Id.)  Defendant contends that given the significant differences in the policy terms,

25    features, administration, and policyholder behavior surrounding lapses, this case is inappropriate

26    for class certification.  (Opp. 14.)  Defendant further argues that some of the policies within the

27    putative class provided notice of the right to designate another person to receive notice of

28    pending lapse or termination for non-payment of premium.  (Guntli Decl. ¶ 26.)

Defendant argues in supplemental briefing that "the Statutes do not refer to a lapse as ineffective in the absence of the annual notice."  (Def.'s Suppl. Brief in Opp. To Pl.'s Mot. for Class Certification 6, ECF No. 86.)  Similarly, in the supplemental reply brief, Defendant argues that the "the Statutes do not suggest – let alone dictate – remedies, if any," for violations of the annual notice violation. (Def.'s Suppl. Reply 7 fn.3, ECF No. 90.)  Defendant merely argues that "the finding that the Statutes create a single, unified pretermination scheme, does not mean that courts can ignore the plain language of the Statutes that do not reference a lapse not being effective in the absence of Annual Notice."  Id. (internal punctuation and references omitted).

Plaintiff asserts, "The subcomponents of the Statutes expressly cross-reference one another, in some cases depend upon one another, and, in turn, must all be read together. McHugh, 12 Cal.5th at 239–40 ('the provisions work together').  In sum, the plain language of The Statutes and the California Supreme Court confirm that all subdivisions should be analyzed together, and Defendant itself treated all the sub-components together in practice."  (Pl's 2nd Suppl. Brief 4.)

Defendant states that Plaintiff received the required 60-day notice and notice of pending lapse under Section 10113.71, Defendant specifically argued at the November 8, 2023, hearing that the Statutes does not provide for nontermination of the policy based on the failure to provide annual notice to the policyholder of the ability to designate a third party to receive notice of lapse or termination for non-payment of the premium.  Accordingly, the Court considers this issue as it directly relates to Defendant's argument that Plaintiff's claim is not typical of the class.

While Plaintiff's insurance contract did contain a provision for notice that appears to comply with the Statute, Defendant has not argued or provided evidence that Plaintiff was provided with annual notice of the right to designate as required by section 10113.72(b). Plaintiff directs the Court to Bentley, which held that a plaintiff who suffers the "same injury" because of the "same blanket policy" is typical of the class.  Bentley, 2018 WL 3357458, at *9.

> This case is similar to Ballas v. Anthem Blue Cross Life & Health Ins. Co., No. CV 12-00604 MMM (FFMx), 2013 WL 12119569, at *9-10 (C.D. Cal. Apr. 29, 2013).  In that case, the class representative was denied a medical procedure because his insurer determined the requested procedure was experimental. Id. at *9.

> The insurer had a "blanket policy" of denying coverage for anyone seeking this procedure. Id. Thus, the court concluded that the class representative's claim was typical because the class was subjected to the same "blanket policy." Id.
>
> Here, the Court concludes that Plaintiff has shown typicality. All the class members did not receive notices required by the Statutes before their policies lapsed. See Kallenbach Depo. at 45:23-47:18. United followed its general rule of not giving notice on policies purchased before 2013. Id. at 39:7-19. Like in Ballas, Bentley and the class members suffered the same injury because they were subjected to the same blanket policy.

Bentley, 2018 WL 3357458, at *9.

Plaintiff contends that, up until at least December 2021, Defendant decided not to fully apply the Statutes to policies that were issued before January 1, 2013. (Mot. 10.)  Plaintiff has presented evidence that for policies issued prior to January 1, 2013, Defendant did not advise policyholders of the right to designate at least one other person to receive copies of any future notices of pending lapse and termination for nonpayment of the premium.  (Def.'s Suppl. Resp. to Pl.'s Interrogatories, Set One, No. 3, ECF No. 60-2 at 9; Aug. 23, 2022, Depo. of Brian Guntli at 51:10-52:19, 55:7-21, 56:4-8, 69:21-70:19).)

Since the California Supreme Court's decision in McHugh, several district courts have addressed whether a policy can lapse given the failure to notify the policyholder of the right to designate a third party to receive notice.  See Poe v. Nw. Mut. Life Ins. Co., ___ F.Supp.3d ___, 2023 WL 7273741, at *3-4 (C.D. Cal. Oct. 19, 2023) (Relying on McHugh to find that failure to notify of the right to designate a third party to receive notice of a pending termination, sending the mandated form, or providing annual reminders violated the Sections and the policy did not lapse on summary judgment.); Small v. Allianz Life Ins. Co. of N. Am., No. CV20-01944 TJH (KESx), 2023 WL 5811903, at *4 (C.D. Cal. Aug. 25, 2023) (same); Moriarty v. Am. Gen. Life Ins. Co., ___ F.Supp.3d ___, 2023 WL 5211632, at *4 (S.D. Cal. Aug. 14, 2023), motion to certify appeal granted, No. 3:17-CV-1709-JO-WVG, 2023 WL 6280967 (S.D. Cal. Sept. 26, 2023) (same); Farley v. Lincoln Benefit Life Co., No. 2:20-CV-02485-KJM-DB, 2023 WL 5488426, at *4 (E.D. Cal. Aug. 24, 2023) (The Ninth Circuit suggested in Thomas, 2021 WL 4596286, at *1, that any procedural violation of the Statutes means the policy cannot lapse);

1    Grundstrom v. Wilco Life Ins. Co., No. 20-CV-03445-MMC, 2023 WL 5723674, at *1 (N.D.

2    Cal. Sept. 5, 2023) (finding persuasive authority that the policy did not lapse for failure to notify

3    of right to designate); cf. Steen v. Am. Nat'l Ins. Co., No. 2:20-cv-11226-ODW (SKx), 2023 WL

4    4004192, at *2 (C.D. Cal. June 14, 2023) (holding only sections 10113.71(b)(1) and

5    10113.72(b)(1) contain non-lapse and non-termination language).

6          The California Supreme Court stated in McHugh that the Statutes "create a single, unified

7    pretermination notice scheme." McHugh, 12 Cal.5th at 240, 246.  "Each safeguard is intended to

8    provide a policyholder with sufficient warning to protect against lapse or termination for

9    nonpayment, and empower policyholders, especially those who are most vulnerable to missing a

10   premium payment."  Farley v. Lincoln Benefit Life Co., No. 2:20-CV-02485-KJM-DB, 2023

11   WL 3007413, at *6 (E.D. Cal. Apr. 18, 2023), reconsideration denied, No. 2:20-CV-02485-

12   KJM-DB, 2023 WL 5488426 (E.D. Cal. Aug. 24, 2023)).  The absence of any of these statutory

13   safeguards deprives the affected policyholders of important procedural rights.  Farley, 2023 WL

14   3007413, at *6.

15         Considering the Statutes as a "single, unified pretermination notice scheme" which are

16   intended to provide a policyholder with sufficient warning prior to termination of their policy for

17   nonpayment, the third-party notice requirement would be useless absent the insurer providing the

18   policyholder with the opportunity to designate a third party to receive notification.  This court

19   agrees with the weight of authority finding that the non-lapse and non-termination language

20   would apply to the failure to annually advise policyholders of the right to designate a third party

21   to receive notice of the pending termination.  Therefore, Plaintiff is typical of the class to the

22   extent that, similar to the putative class members, she did not receive one of the protections

23   required by the Statutes.

24         **ii.    Whether individual issues preclude a finding of typicality**

25         Plaintiff contends that Defendant is incorrect in arguing that individual issues preclude a

26   finding of typicality because strict compliance with the Statutes is required and there is nothing

27   that a policyholder can do or not do to affect Defendant's liability.  (Mot. 12.)  Plaintiff also

28   asserts that it is easy to see who fits the class definition by reference to Defendant's sortable

Excel spreadsheet listing over 15,000 lapsed policies.  (Id. 14.)

Defendant responds that there are at least 147 different product types in the putative class and each type has different terms, features, duration of coverage, premium amounts and the timing and content of notices provided to policyholders.  (Opp. 8.)  Defendant maintains copies of correspondence and documents related to individual files stored electronically in policy-specific files.  (Id.)  Within the administration systems, data fields contain basic information such as issue date, lapse date, and coverage type.  (Id.)  These data fields do not contain individualized information, such as policyholder termination requests or communication occurring before the lapse of the policy, which Defendant asserts are relevant to determining if the lapses were intentional.[8]  (Id.)

Defendant contends that the death of Plaintiff's father, the policyholder, has crested new and independent reasons that the motion for certification should be denied.  Specifically, Defendant argues that Plaintiff is not entitled to injunctive or declaratory relief as there is no ongoing relationship between Plaintiff and Defendant, she is now seeking monetary damages, and she cannot adequately represent a class seeking only declaratory relief.  (Def.'s Suppl. Brief Related to Death of Insured 5, ECF No. 107.)  Further, Defendant argues that Plaintiff's claim seeking damages is not typical of the class who are only seeking declaratory relief.  (Id.)  Finally, Defendant argues that Plaintiff has never proffered herself as a representative of the elder abuse subclass and without a class representative the subclass cannot be certified.[9]  (Id.)   In reply,

---

[8]  The Court considers the merits of Plaintiff's claims to the extent required to address class certification," Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011), however, proof of Plaintiff's claims is not required to certify the class.  "[N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule."  Wolin v. Jaguar Land Rover North Am., LLC, 617 F.3d 1168, 1173 (9th Cir. 2010) (quoting Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975).)

[9]  Defendant contends that Mr. Holland, individually or through a power of attorney, cannot pursue claims in this action.  (Def.'s Suppl. Brief Re: Death of Insured 3.)  Defendant argues that under Rule 25 of the Federal Rules of Civil Procedure, Mr. Holland's estate would be the proper party to substitute for Mr. Holland.  (Id.)  Defendant opines that in the absence of a proper substitution, this action must be dismissed.  (Id. 4.)  However, Plaintiff alleges that she is the beneficiary under the life insurance policy, not the estate of Mr. Holland.  Defendant does not dispute that any benefits due under the policy would be payable to Plaintiff.  Nor does Defendant argue that Plaintiff could not pursue a breach of contract action individually based on her status as the beneficiary of the policy.  Accordingly, the Court finds that dismissal under Rule 25 is not necessary.  Rather, Plaintiff can move to amend her complaint to comport with her new position as beneficiary seeking damages under the policy.

1  Plaintiff states that she is no longer offering herself as a representative of the elder abuse

2  subclass.  (Pl's Suppl. Reply 2, ECF No. 110.)

3         For the following reasons, the Court finds that Plaintiff has not proven by a

4  preponderance of the evidence that her claims and defenses are typical of the class.  Parsons, 754

5  F.3d at 685.   Initially, Defendant has presented evidence that some individuals within the

6  putative class affirmatively chose to terminate their policies by allowing their policies to lapse by

7  nonpayment of premiums.  (Opp. 15.)  These individuals who affirmatively chose to allow their

8  policies to lapse are not the individuals the Statute were enacted to protect.  The Statutes were

9  enacted to protect individuals from inadvertent, not intentional, termination of their policies.

10  McHugh, 12 Cal.5th at 233, 246.

11         Here, the class to be certified includes:

12     All owners, or beneficiaries upon a death of the insured, of Defendant's individual
       life insurance policies issued in California before 2013 that Defendant lapsed or
13     terminated for the non-payment of premium in or after 2013 without first
       providing all the notices, grace periods, and offers of designation required by
14     Insurance Code Sections 10113.71 and 10113.72.

15

16         "Article III does not give federal courts the power to order relief to any uninjured

17  plaintiff, class action or not.  The Judiciary's role is limited 'to provid[ing] relief to claimants, in

18  individual or class actions, who have suffered, or will imminently suffer, actual harm.' " Tyson

19  Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 466 (2016) (quoting Lewis v. Casey, 518 U.S. 343,

20  349 (1996)).

21         Plaintiff contends that individuals subjective, uncommunicated, intent is not relevant,

22  however, Defendant has presented evidence of policyholder communication with the insurance

23  company asserting they intended to terminate their coverage because it had become too

24  expensive or were replacing coverage with another policy.  It is not the subjective intent as to

25  each policyholder, but as to those who informed the insurance company that they no longer

26  wished to continue their policies that the Court finds to destroy typicality.  Where a policyholder

27  notified Defendant that they no longer wished to maintain their policy and were told that it would

28

1    lapse upon nonpayment of the premium, that policyholder has suffered no harm.[10]   See also

2    Steen, 2023 WL 4004192, at *9 ("as a matter of statutory interpretation, the Statutes do not apply

3    (that is, the insurer is not required to provide the safeguards listed in the Statutes) when the

4    policyholder has affirmatively cancelled their policy with the insurer.  Of the very few district

5    court opinions that address this particular issue, all of them—including those courts that

6    ultimately did certify a class—appear to confirm that this is the correct reading of the Statutes.").

7           Plaintiff argues it is easy to see who fits the class definition by reference to Defendant's

8    sortable Excel spreadsheet listing over 15,000 lapsed policies.  (Mot. 12.)  However, Defendant

9    presents evidence that individualized inquiry that would be required to determine if a class

10   member suffered injury in the first place.  Information required to assess policyholder choice

11   (e.g., the decision or intent to allow a policy to lapse) is not maintained in data fields that can be

12   readily extracted from the administrative systems. (Guntli Decl. ¶¶ 13, 34, 45, 51, 58-59, ECF

13   No. 73-1.)  It can be identified only through a detailed review of policy-specific information or

14   communications with third parties, such as agents or producers. (Id. ¶¶ 13, 44, 58-59.)

15   Defendant states that the data fields identify "lapses," but "lapses" include termination requests,

16   surrender requests, and terminations based on policyholder intent or choice.

17          This Court is not convinced that individuals who communicated to the insurer or their

18   agent that they surrendered or intended to allow the policies to lapse are those the Statute was

19   enacted to protect.  Other Courts similarly have found that the class cannot contain individuals

20   who affirmatively terminated their policies.  See Farley, 2023 WL 3007413, at *5 (excluding

21   policy holders who terminated their policies); Bentley v. United of Omaha Life Ins. Co., No.

22   CV157870DMGAJWX, 2018 WL 3357458, at *6 (C.D. Cal. May 1, 2018) (same); Steen, 2023

23   WL 4004192, at *9–10 ("To the extent the class does contain policyholders who affirmatively

24   cancelled, the class definition precludes typicality.).

25          Additionally, Plaintiff is the beneficiary under her father's life insurance policy.  The

26

27   ---

     [10] Under California law, the elements of a breach of contract claim are the existence of a contract, plaintiff's
     performance or excuse from performance, a breach by defendant, and damage to the plaintiff.   Satvati v. Allstate

28   Northbrook Indem. Co., 634 F.Supp.3d 792, 797 (C.D. Cal. 2022) (citing Walsh v. W. Valley Mission Cmty. Coll.
     Dist., 66 Cal.App.4th 1532, 1545 (1998)).

class at issue here contains over 10,700 policies, of which less than three percent would be typical of Plaintiff.  (Pl.'s Reply 3.)  Plaintiff seeks benefits as the beneficiary under the policy. Accordingly, Plaintiff is not typical of the approximately ninety-seven percent of the putative class members who are still living and seek declaratory and injunctive relief to which Plaintiff is not entitled.

Plaintiff argues that she is "an adequate representative because she wants all the same things all class members would want for all the same reasons, Plaintiff would be an adequate representative of all groups, including the group of living policy owners that her late father James had typified."  (Pl.'s Suppl. Reply, 8, ECF No. 110.)  However, for the reasons discussed above, the Court finds that Plaintiff has not demonstrated by a preponderance of the evidence that all putative class members are wanting the same things that Plaintiff wants.  Specifically, Defendant has presented evidence that some policyholders who fall within the class definition affirmatively indicated their intent to terminate their insurance policies.  Plaintiff is not typical to these individuals because she wants her policy reinstated, she is seeking payment of the death benefit, and she is not a policyholder.

Similar to Plaintiff here, in Pitt, the court found the plaintiff was not typical of the class because she was a beneficiary seeking benefits and 97 percent of the class were still alive and seeking reinstatement of their policies.  Pitt, 2022 WL 17972167, at *5.  Also, in Poe, the court found that typicality did not exist because some members of the class affirmatively canceled their policies and therefore, the putative class members suffered different injury, therefore different questions of causation and damages underlie her claims from those of the class.  Poe v. Nw. Mut. Life Ins. Co., No. 8:21-CV-02065-SPG-E, 2023 WL 5251875, at *5 (C.D. Cal. Aug. 14, 2023), reconsideration denied, No. 8:21-CV-02065-SPG-E, 2023 WL 6852018 (C.D. Cal. Sept. 27, 2023)

The Court finds that Plaintiff has not demonstrated that her claims and defenses are typical of the class.

### d.     **Adequacy of Representation**

The Court must ensure "the representative parties will fairly and adequately protect the

interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., v. Windsor, 521 U.S. 591, 625 (1997).  In determining whether the named plaintiffs will adequately represent the class, the courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Ellis, 657 F.3d at 985 (quoting Hanlon, 150 F.3d at 1020).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." Ellis, 657 F.3d at 985 (citing Molski v. Gleich, 318 F.3d 937, 955 (9th Cir.2003)).  Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem Prod., 521 U.S. at 626 (internal quotations and citations omitted).  This factor also tends to merge with the commonality and typicality criteria of Rule 23.  Id. at 626 fn.20.

Plaintiff argues that she is "an adequate representative because she wants all the same things all class members would want for all the same reasons, Plaintiff would be an adequate representative of all groups, including the group of living policy owners that her late father James had typified." (Pl.'s Suppl. Reply, 8, ECF No. 110.)  For the reasons discussed above, the Court finds that Plaintiff does not want the same things all putative class members would want for the same reasons.  Plaintiff is seeking damages in this action, and ninety-eight percent of the putative class will be seeking declaratory and injunctive relief to which Plaintiff is not entitled.  Additionally, the class includes individuals who affirmatively choose to terminate their policies and these class members are not entitled to nor is it clear they would want their policies to be reinstated.

Further, if Plaintiff prevails on her claim for damages, she is entitled to receive a substantial death benefit, while ninety-seven percent of the class would be required to bring premiums current to reinstate their policies which could require these class members to pay thousands of dollars in back premiums.  In other words, while Plaintiff is seeking monetary relief on her own behalf, the vast majority of the class will be required to pay to reinstate their

policies.[11]  This raises the issue of whether there is a conflict of interest with the living policy holders and whether Plaintiff will adequately represent their interests.  Farley, 2023 WL 3007413, at *9 (finding living plaintiff was not adequate representative for the class members who have passed away).  For these reasons, the Court finds that Plaintiff is not an adequate representative for the class.

### 2.   Predominance and Superiority under Rule 23(b)(3)

The test for Rule 23(b)(3) is far more demanding than commonality under Rule 23(a), Wolin, 617 F.3d at 1172, and the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Tyson Foods, Inc., 577 U.S. at 453 (quoting Amchem Products, Inc., 521 U.S. at 623).  The question under Rule 23(b)(3) is whether the common question predominates.  Wolin, 617 F.3d at 1172.  Courts must "give careful scrutiny to the relation between common and individual questions in a case."  Tyson Foods, Inc., 577 U.S. at 453.  "To determine whether a class satisfies the requirement, a court pragmatically compares the quality and import of common questions to that of individual questions."  Jabbari v. Farmer, 965 F.3d 1001, 1005 (9th Cir. 2020).

"An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.' ".  Tyson Foods, Inc., 577 U.S. at 453 (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)).  Where "one or more of the central issues in the action are common to the class and can be said to predominate,

---

[11] Plaintiff argues that the class would not be required to pay back premiums to have their policies reinstated.  While Plaintiff argues that the Statutes provide 60 days of free insurance, the Statutes provide for sixty-day notice in which the policy remains in effect.  If a policyholder passed within this timeframe, the insurer would withhold the premium payments due from any benefit paid.  In order to reinstate the policy, the policyholder would be required to bring premium payments up to date.  See Cal. Ins. Code § 480 ("An insurer is entitled to payment of the premium as soon as the subject matter insured is exposed to the peril insured against."); see also McHugh, 12 Cal.5th at 233("the insurer would be entitled to deduct the unpaid premium payment from any life insurance benefits it pays out."); Poe v. Nw. Mut. Life Ins. Co., ___ F.Supp.3d ___, 2023 WL 7273741, at *5 (C.D. Cal. Oct. 19, 2023) (unpaid premiums must be deducted from the face value of the policy); Ok Hee Park, 2023 WL 1931373, at *3 ("Defendant rightfully and accurately deducted unpaid premiums from benefits paid to Plaintiff.").  Any other interpretation would be inconsistent with McHugh's finding that the Statutes were retroactive because they did not substantially impair the insurance company's rights under the existing policy.  McHugh, 12 Cal.5th at 244.  Requiring an insurance company to waive premiums, potentially for almost a decade, would clearly impair the company's rights under the policy.

the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Tyson Foods, Inc., 577 U.S. at 453-54 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)).

> If the plaintiff demonstrates that class issues exist, the defendant must invoke individualized issues and provide sufficient evidence that the individualized issues bar recovery on at least some claims, thus raising the spectre of class-member-by-class-member adjudication of the issue. See True Health Chiropractic, Inc. v. McKesson Corp., 896 F.3d 923, 932 (9th Cir. 2018) ("[W]e do not consider ... defenses that [the defendant] *might* advance or for which it has presented no evidence." (emphasis added)).

> If the defendant provides evidence that a valid defense—affirmative or otherwise—will bar recovery on some claims, then the district court must determine, based on the particular facts of the case, "whether individualized questions ... 'will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3).' " [Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651, 669 (9th Cir. 2022)] (quoting Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 276, 134 S.Ct. 2398, 189 L.Ed.2d 339 (2014)).

Van v. LLR, Inc., 61 F.4th 1053, 1067 (9th Cir. 2023).

When a defendant substantiates individualized issues, even for only a small number of the class members, "the district court must determine whether the plaintiff has proven by a preponderance of the evidence that the questions of law or fact common to class members predominate over any questions affecting only individual members—that is, whether a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable." Van, 61 F.4th at 1069 (citing Bowerman v. Field Asset Services, Inc., 60 F.4th 459, 469 (9th Cir. 2023)).

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." Erica P. John Fund, Inc., 563 U.S. at 809. In this breach of contract action, Plaintiff has raised a common question, however the test for 23(b)(3) is far more demanding then the commonality inquiry and "asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' " Wolin, 617 F.3d at 1172 (internal citations omitted). For the reasons discussed infra, the Court finds that common questions do not predominate over questions affecting individual members.

Specifically, the class as defined contains members who affirmatively indicated they were terminating or replacing their individual policy.  "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  Pitt, 2022 WL 17972167, at *5 (quoting Wal-Mart, 564 U.S. at 350).  The predominance factor is not met where "non-common, aggregation-defeating, individual issues" are more prevalent or important than "common, aggregation-enabling, issues in the case."  Tyson Foods, Inc., 577 U.S. at 453.

> To ensure that common questions predominate over individual ones, the court must "ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct."  Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1138 (9th Cir. 2016) (citation omitted).  If many class members have no claim whatsoever because they "were never exposed to the challenged conduct to begin with," the class does not satisfy Rule 23(b)(3).  Id. at 1136; see also Moore v. Apple Inc., 309 F.R.D. 532, 542 (N.D. Cal. 2015) ("The inclusion of class members whom, by definition, could not have been injured is ... indicative of the individualized inquiries that would be necessary to determine whether a class member has suffered any injury in the first place.").

Castillo v. Bank of Am., NA, 980 F.3d 723, 730 (9th Cir. 2020).  For the reasons discussed at IV.B.1.c.ii, the Court finds Plaintiff's claims are not typical of the class.  The individual questions of whether the putative class members notified Defendant or their insurance agents of their intent to terminate or allow the policy to lapse precludes certification under Rule 23(b)(3).

Rule 23(b)(3)'s superiority requirement, tests whether a class action is the most efficient and effective means of resolving the controversy.  Wolin, 617 F.3d at 1175.  Related to the commonality test, the superiority test under Rule 23(b)(3) "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair."  Id. at 1175–76.  Both the commonality and superiority test are concerned with judicial economy.  Id. at 1176.

Given the individual issues to be address and the dissimilarity in Plaintiff's claims, the Court finds that the predominance and superiority requirements have not been met.  The Court recommends that certification be denied under Rule 23(b)(3).

### C.  Certification Under Rule 23(c)(4).

In the alternative, Plaintiff seeks certification under Rule 23(c)(4).  Rule 23(c)(4)

1    provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with

2    respect to particular issues."  Plaintiff contends that the Court should certify the class under Rule

3    23(c)(4) as to the legal issue of whether the Statutes apply to the pre-2013 policies and whether

4    the failure to comply rendered the terminations of the policies ineffective.   (Mot. 26.)

5    Certification of an issues class under Rule 23(c)(4) is "appropriate" only if it " 'materially

6    advances the disposition of the litigation as a whole.' " Rahman v. Mott's LLP, 693 F. App'x

7    578, 579 (9th Cir. 2017) (quoting William B. Rubenstein, 2 Newberg on Class Actions 4:90 (5th

8    ed. 2012) and Manual for Complex Litigation, Fourth, § 21.24 (2004)).  The issue of whether the

9    Statutes apply to pre-2013 policies and the effect of noncompliance has already been decided by

10   the California Supreme Court in McHugh and applied in this circuit.  The McHugh court held all

11   California life insurance policies are entitled to receive the Statutes' protections regardless of the

12   date of issuance.   McHugh, 12 Cal.5th at 220.   An insurer's failure to comply with these

13   statutory requirements means that the policy cannot lapse.  Thomas, 2021 WL 4596286, at *1

14   (citing McHugh, 12 Cal.5th at 240, 246).  Therefore, certifying this issue in this action would not

15   materially advance the disposition of the litigation as a whole.  Rahman, 693 F. App'x at 579.

16        The Court recommends that Plaintiff's motion to certify the class under Rule 23(c)(4) be

17   denied.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**V.**

**CONCLUSION AND RECOMMENDATIONS**

For the reasons contained within these findings and recommendations, the Court recommends that Plaintiff's motion for class certification be denied.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 27, 2024**

UNITED STATES MAGISTRATE JUDGE

30